## VANCE & Another *v.* VANCE, Executrix.

IN ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

Decided May 7th, 1883.

*Constitutional Law—Limitations—Louisiana—Minors—Statutes.*

The Civil Code of Louisiana provided, in respect of tutors of minors, as follows: " The property of the tutor is tacitly mortgaged in favor of the minor from the day of his appointment as tutor, as security for his administration, and for the responsibility which results from it." The Constitution of Louisiana subsequently adopted (in April, 1868), provided as follows: " No mortgage or privilege shall hereafter affect third parties, unless recorded in the parish where the property to be affected is situated. The tacit mortgages and privileges now existing in this State shall cease to have effect against third persons after the 1st January, 1870, unless duly recorded. The general assembly shall provide by law for the registration of all mortgages and privileges." The legislature of Louisiana, on the 8th [March, 1869, enacted the necessary legislation to carry this provision of the State Constitution into effect: *Held,*

1. That these provisions of the Constitution and of the statute requiring owners of tacit mortgages to record them for the protection of innocent persons dealing with the tutor, and giving ample time and opportunity to do what was required, and what was eminently just to everybody, did not impair the obligation of contracts.

2. That these provisions are in the nature of statutes of limitations. Previous decisions of the court respecting limitations referred to and approved.

3. That the fact that the plaintiff was a minor when the law went into operation makes no difference. In the absence of a provision in the Constitution of the United States giving minors special rights, it is within the legislative competency of a State to make exceptions in their favor or not, and the act in question made no exception.

*Mr. Charles W. Hornor* for plaintiff in error.

*Mr. E. M. Hudson* for G. W. Sentell & Co., intervenors and defendants in error.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Supreme Court of Louisiana.

In a proceeding in the State court of Louisiana the plaintiff in error recovered a judgment against the defendant in error, as executrix of the succession of her husband, S. W. Vance, for the sum of about $75,000 due from him to plaintiff in error as

her natural tutor.   The sum thus found due was the result of an accounting concerning this tutorship during the period between October 15th, 1859, and May 18th, 1877.

Article 354 of the Civil Code of Louisiana, in force when this tutorship began, says :

"The property of the tutor is tacitly mortgaged in favor of the minor from the day of the appointment of the tutor, as security for his administration, and for the responsibility which results from it."

The court of probate, which adjusted this account, decreed in favor of the plaintiff in error, that her mortgage privilege for the sums and interest found due her be recognized on all the lands owned by Samuel W. Vance, the deceased tutor, on and after the 15th day of October, 1859.

From this branch of the decree certain creditors of the deceased tutor, who had been permitted to intervene, appealed to the supreme court of the State, and that court reversed the decree of the probate court by deciding against the existence of this mortgage privilege.

The ground on which this privilege was denied is found in article 123 of the Constitution of the State of Louisiana adopted in April, 1868, which is as follows:

"The general assembly shall provide for the protection of the rights of married women to their dotal and paraphernal property, and for the registration of the same ; but no mortgage or privilege shall hereafter affect third parties, unless recorded in the parish where the property to be affected is situated.   The tacit mortgages and privileges now existing in this State shall cease to have effect against third persons after the 1st January, 1870, unless duly recorded.   The general assembly shall provide by law for the registration of all mortgages and privileges."

The legislature did pass the act of March 8th, 1869, No. 95:

"To carry into effect article 123 of the Constitution, and to provide for recording all mortgages and privileges."

Session Acts 1869, p. 114, section 11, reads :

" That it shall be the duty of the clerks of the district courts of the several parishes in this State to make out an abstract of the inventory of the property of all minors whose tutors have not been required by law to give bond for their tutorship, such abstract to describe the real property, and give the full amount of the appraisement of all the property, both real and personal, and rights and credits, and to deposit such abstracts with the recorders of the several parishes, whose duty it shall be to record the same as soon as received in the mortgage book of their parish; such abstracts to be made out and deposited with the recorders by the first day of December, 1869, and recorded by the first day of January, 1870. This section to apply only to tutorship granted before the passage of this act, and any failure of the clerks or recorders to perform the service required by this section shall subject them to any damages that such failure may cause any person, and shall further subject them to a fine of not less than one hundred nor more than one thousand dollars, for the benefit of the public school fund, to be recovered by the district attorney or district attorney *pro tem.* before any court of competent jurisdiction; such abstracts, when recorded in any parish in which the tutor owns mortgageable property shall constitute a mortgage on the said tutor's property until the final settlement and discharge of the tutor : the fees for making out and recording such abstracts shall be the same as the fees prescribed for the clerks and recorders for other similar services, and shall be paid on demand by the tutor, or, if the minors have arrived at the age of majority, by them; and if no responsible person can be found, then any property owned by the minors for whose benefit such services were performed shall be sold to pay the same; and if no person or property be found to pay the same, then the parish shall pay the same, and have recourse against the person or property of any person for whose benefit the services were performed."

The case comes to this court on the proposition, that, as thus construed, the Constitution and statute of Louisiana impair the obligation of her contract with her tutor concerning his duty to account for her estate in his hands, and also violates the provision of section 1, article XIV., of the amendments to the Constitution of the United States.

The view of the Supreme Court of Louisiana on this matter

is very clearly presented in the following extract from its
opinion in the case :

"Waiving the question (which is certainly a debatable one),
whether or not the obligations and mortgages existing against
the natural tutor in favor of his ward arise or spring from con-
tracts, we think the plaintiff's argument untenable, in that it as-
sumes that article 123 destroyed or impaired plaintiff's mortgage
obligation in the sense of the Constitution of the United States.
Had the article simply declared the abolition and extinction *eo
instanti* of all tacit mortgages, there would have been the case
presented by plaintiff's argument. But it did nothing of the sort.
It fixed a future day, reasonably distant, and declared that such
mortgages would perempt, prescribe, or cease to exist as to third
persons unless recorded by that date.

"It is in its nature a statute of limitations. The right of the
State to prescribe the time within which existing rights shall be
prosecuted, and the means by and conditions on which they may
be continued in force, is, we think, undoubted. Otherwise, where
no term of prescription exists at the inception of a contract, it
would continue in perpetuity, and all laws fixing a limitation upon
it would be abortive. Now, it is elementary that the State may
establish, alter, lengthen, or shorten the period of prescription of
existing rights, provided that a reasonable time be given in future
for complying with the statute." See Cooley's Constitutional
Limitations, p. 376; Story on Constitution, 236, § 1385.

These observations seem to us eminently just. The strong
current of modern legislation and judicial opinion is against the
enforcement of secret liens on property. And in regard to real
property, every State in the Union has enacted statutes holding
them void against subsequent creditors and purchasers, unless
they have actual notice of their existence, or such constructive
notice as arises from registration.

The Constitution of Louisiana introduced this principle and
did it with due regard to existing contracts. It did not change,
defeat, or impair the obligation of the tutor to perform that
contract. It did not take away or destroy the security which
existed by way of lien on the tutor's property, nor as between

the tutor and the ward did it make any change whatever.　But it said to the latter :

" You have a secret lien, hidden from persons who are dealing every day with the tutor on the faith of this property, and in ignorance of your rights.　We provide you a way of making those rights known by a public registration of them which all persons may examine, and of which all must take notice at their peril.　We make it the duty of officers having charge of the offices where the evidence of your claim exists to make this registration. We make it your duty also to have it done.　We give you a reasonable time after this Constitution is passed and after the enabling statute is passed to have this registration made.　If it is not done within that time your debt remains a valid debt, your mortgage remains a valid mortgage, but it binds no one who acquires rights after that in ignorance of your mortgage, because you have not given the notice which the law requires you to give."

We think that the law, in requiring of the owner of this tacit mortgage, for the protection of innocent persons dealing with the obligor, to do this much to secure his own right, and protect those in ignorance of those rights, did not impair the obligation of the contract, since it gave ample time and opportunity to do what was required and what was eminently just to everybody.

The authorities in support of this view are ample.

Perhaps the case most directly in point is one in this court, namely, *Curtis* v. *Whitney*, 13 Wall. 68.

That was a case like this, arising out of a statutory contract, to which the legislature, by a law enacted after it was made, added, as in this, the duty of giving notice.　Curtis purchased at a public sale for delinquent taxes a tract of land, and received from the proper officer a certificate, which by law authorized her to obtain a deed at the end of three years, if the land was not redeemed by paying the amount of the bid and interest.

After this sale, and before the end of the three years, the State passed an act that, where any person was found in the actual occupancy of the land, the deed should not issue unless

a written notice had been served on the owner of the land or on the occupant by the holder of the tax certificate at least three months prior thereto, and it was made applicable to past sales as well as future. Mrs. Curtis applied for and obtained her deed without giving this notice, and when she brought suit to quiet the title so acquired, the Supreme Court of Wisconsin decided her deed void for want of it.

The case was brought to this court on the ground that the statute of Wisconsin requiring this notice impaired the obligation of the contract evidenced by the certificate of sale, but this court held that it did not. That the case is very like the one before us is obvious. The court said:

"That the statute is not void because it is retrospective has been repeatedly held by this court, and the feature of the act of 1867, which makes it applicable to certificates already issued for tax sales, does not of itself conflict with the Constitution of the United States. Nor does every statute which affects the value of a contract impair its obligations. It is one of the contingencies to which parties look now in making a large class of contracts that they may be affected in many ways by State and by national legislation. For such legislation demanded by the public good, however it may retroact on contracts previously made, and enhance the cost and difficulty of performance, or diminish the value of such performance to the other party, there is no restraint in the federal Constitution, so long as the obligation of performance remains in full force. In the case before us the right of the plaintiff is not taken away nor the time when she would be entitled to it postponed. . . . The right to the money or the land remains, and can be enforced whenever the party gives the requisite legal notice. The authority of the legislature to frame rules by which the right of redemption may be rendered effectual cannot be questioned, and among the most appropriate and least burdensome of these is the notice required by statute."

In the case of *Louisiana* v. *New Orleans*, 102 U. S. 203; the supreme court of the State refused the relator a writ of mandamus to enforce a levy of taxes to pay a judgment against the city, on which an execution had been issued and a

return of *nulla bona* made. The supreme court denied the
writ because the relator had not registered his judgment with
the proper officer of the city, under a statute which required
such registry in order that proper levy of taxes might be
made and judgments paid in their proper order.

The case was brought to this court on the proposition that
the statute, which was enacted after relator's contract was
made, was an impairment of its obligation within the meaning
of the Constitution of the United States.

But this court held that the registry of these judgments was
" a convenient mode of informing the city authorities of the
extent of the judgments, and that they have become executory,
to the end that proper steps may be taken for their payment.
It does not impair existing remedies."

In *Jackson* v. *Lamphire*, 3 Pet. 280, this court said:

" It is within the undoubted power of State legislatures to pass
recording acts, by which the elder grantee shall be postponed to
a younger, if the prior deed is not recorded within the limited
time ; and the power is the same, whether the deed is dated be-
fore or after the recording act. Though the effect of such a law
is to render the prior deed fraudulent and void against a subse-
quent purchaser, it is not a law impairing the obligation of con-
tracts. Such, too, is the power to pass acts of limitation, and
their effect. Reason and sound policy have led to the general
adoption of laws of both descriptions, and their validity cannot
be questioned."

And this language is reproduced with approval in the case
of *Curtis* v. *Whitney*, above referred to.

The decisions in regard to the statute of limitation are full to
the same purpose, and as the Supreme Court of Louisiana says,
this is a statute of limitation, giving a reasonable time within
which the holder of one of these secret liens may make it pub-
lic, otherwise it will be void against subsequent purchasers and
creditors without notice.

The case of *Terry* v. *Anderson*, 95 U. S. 628, presents, in
the terse language of the Chief Justice of this court, both the
rule, the reason for it, and the limitation which the constitu-

tional provision implies. This court, he says, "has often de-
cided that statutes of limitation affecting existing rights are
not unconstitutional, if a reasonable time is given for the en-
forcement of the action before the bar takes effect."

He adds, in reference to the case then before the court,
which was a South Carolina statute of limitation, passed since
the civil war :

"The business interests of the entire people of the State had
been overwhelmed by a calamity common to all. Society demanded
that extraordinary efforts be made to get rid of old embarrass-
ments, and permit a reorganization upon the basis of the new
order of things. This clearly presented a case for legislative in-
terference within the just influence of constitutional limitations.
For this purpose the obligations of old contracts could not be
impaired, but their prompt enforcement could be insisted upon, or
an abandonment claimed. That, as we think, has been done here,
and no more."

And *Jackson* v. *Lamphire* is again cited with approval.

The same principle is asserted in the case of *Koshkoning* v.
*Burton*, 104 U. S. 668. Other cases in this court are
*Hawkins* v. *Barry's Lessee*, 5 Pet. 457; *Sabin* v. *Waterson*, 17
Wall. 596 ; *Sturges* v. *Crowninshield*, 4 Wheat. 122.

It is urged that because the plaintiff in error was a minor
when this law went into operation, it cannot affect her rights.
But the Constitution of the United States, to which appeal is
made in this case, gives to minors no special rights beyond
others, and it was within the legislative competency of the
State of Louisiana to make exceptions in their favor or not.
The exemptions from the operation of statutes of limitation usu-
ally accorded to infants and married women do not rest upon
any general doctrine of the law that they cannot be subjected
to their action, but in every instance upon express language in
those statutes giving them time after majority, or after cessa-
tion of coverture, to assert their rights. No such provision is
made here for such exception, but, in place of it, the legislature
has made it the duty of the proper officer of the court to act

for them.   It was also the duty of the under tutor appointed in this case.

If the foregoing considerations be sound, they answer also effectually the suggestion in regard to the Fourteenth Amendment of the Constitution of the United States.

We see no error in the record of the case of which this court has jurisdiction, and

*The decree of the Supreme Court of Louisiana is affirmed.*