In re COOK.

(Supreme Court, Appellate Division, Third Department.   September 9, 1903.)

1. BANKS—CERTIFICATES OF DEPOSIT—LIMITATIONS.

A certificate of deposit, payable on demand on the order of the payee, and bearing interest provided the amount deposited was left in the bank six months, does not mature, so as to start the statute of limitations running against the holder's right to recover thereon, until presentation for payment.

2. SAME—LOST CERTIFICATES—PAYMENT—CANCELLATION—STATUTES—CONSTITU-TIONAL LAW—OBLIGATION OF CONTRACTS.

Laws 1899, p. 923, c. 451, as amended by Laws 1901, p. 1243, c. 503, providing that in case of lost certificates of deposit the person to whom it was issued, his executors, administrators, or assigns, may apply to the Supreme Court for an order directing payment and canceling the same, and after such order no claim can be made by any person having such certificate in his possession against the bank, but that the bank shall thereafter forever be entirely relieved from any liability by reason of having issued such certificate, or for the money due thereon, in so far as it affected lost certificates issued before the act took effect, was unconstitutional, as impairing the obligation of contracts.

Chester, J., dissenting.

Appeal from Special Term, Montgomery County.

Application by Jacob C. Cook, as administrator of the estate of Clarissa Cook, deceased, for the cancellation of a certificate of deposit for the release of a bond given to secure payment thereof. From an order granting the application, the National Spraker Bank appeals. Reversed.

This proceeding is taken under chapter 451, p. 923, of the Laws of 1899, as amended by chapter 503, p. 1243, of the Laws of 1901. The petition is made by Jacob C. Cook, as administrator of the estate of Clarissa Cook, deceased, and shows the following facts: Upon the 10th day of October, 1885, the National Spraker Bank, of Canajoharie, N. Y., issued, for value received, to Clarissa Cook, a certificate of deposit, dated on that day, for the sum of $5,400. Thereafter said certificate was lost or destroyed, and the said Clarissa Cook was declared a lunatic, and Jacob Cook, the petitioner, was appointed the committee of her person and estate. As such committee, said Jacob Cook demanded the payment of the said certificate, and the said Cook, together with one Josiah Snell and one Alfred W. Shull, duly made, executed, and delivered a bond of indemnity, conditioned to save the bank harmless against all loss from said certificate of deposit. Thereupon the said bank paid the amount of said certificate of deposit to Jacob C. Cook, as the committee of said Clarissa Cook. Thereafter, in 1894, the said Clarissa Cook died, and the petitioner was appointed as administrator of her estate. In January, 1900, Josiah Snell died, and executors were appointed of his will, who were made parties to this proceeding. The prayer of the petitioner is for an order declaring the said certificate null and void, and for the release of said bond of indemnity and of the obligors thereof; and that for that purpose an order may be made directing the publication of a proper notice, as required by the statute, and that such proceedings may be had as required by law, and an order finally made declaring such certificate null and void. Notice of this application was duly served upon the bank, and over the objection of the bank an order was made directing the publication of the notice required by the statute above referred to, and thereafter a final order was made declaring said certificate null and void, and releasing said bank from all liability thereon, and canceling any claim the bank might have upon the bond or undertaking given by the said Snell and Shull. From this final order, as well as from

¶ 1. See Limitation of Actions, vol. 33, Cent. Dig. § 362.

the intermediate order which directed the publication of the notice pursuant to the statute, the National Spraker Bank of Canajoharie has appealed to this court.

Argued before PARKER, P. J., and SMITH, KELLOGG, CHASE, and CHESTER, JJ.

Benjamin F. Spraker (Andrew J. Hollis, of counsel), for appellant.
W. H. Van Sternbergh (Henry V. Borst, of counsel), for respondent.

SMITH, J.   The right of the appellant to question this order upon appeal seems apparent.   The statute requires the bank to be made a party to the proceedings, and by the order entered the security held by the bank has been discharged.   Against such an order the bank has a material interest to defend.

Nor need we consider whether this statute was intended to affect past transactions.   It will hardly be questioned that it would have such effect, unless it took away vested rights.   The sole question, therefore, for our consideration is upon the appellant's challenge of the statute as an unauthorized exercise of legislative power.

There is a practical agreement between counsel as to the general rules by which the validity of a statute is to be determined.   That the obligation of contracts cannot be impaired is the plain direction of the Constitution.   On the other hand, that a statute of limitations may be prescribed when none before existed, or that an existing statute of limitations may be modified by an act reducing the time within which an action may be brought, is not questioned, provided only that a reasonable time be left after the passage of the act within which an action may be brought.   The respondents' claim is to the effect that this statute is, in its nature, a statute of limitations, while the contention of the appellant is that the statute goes further, and impairs the obligation of its contract.

By the certificate of deposit in question the appellant agreed to pay to the order of Clarissa Cook $5,400, with interest, if left six months. It is not claimed that this makes a demand note which is due at once, or within a reasonable time, so that the statute of limitations runs. It has been held, and it must be conceded, that, apart from the statute in question, this paper might well be held for such a length of time as the holder might choose, during which time it would bear interest, and until the presentation of the same the obligation does not become due, and the statute of limitations does not begin to run.   See Payne v. Gardiner, 29 N. Y. 146; Cottle v. Marine Bank, 166 N. Y. 58, 59 N. E. 737.   In the case last cited, Landon, J., in writing for the court, speaking of a certificate of deposit, says:

"But in this case the paper requires demand upon a specified condition, namely, 'to his [the depositor's] order hereon,' and the demand must correspond with the obligation of payment, and that requires presentation of the certificate to the bank, properly indorsed, unless the bank should waive the indorsement."

If a statute were passed making the bank liable upon such a paper without demand, its effect as a material modification of the contract would hardly be questioned.   To add to the contract, as has

been attempted by this statute, a requirement that under certain conditions the holder of the paper must present his paper to the bank under penalty of a forfeiture of his contract, seems to me no less a modification of the contract made by the parties; and I am unable to see any principle of law upon which the Legislature can be claimed to hold this power to alter a contract made.

This statute has in it no element of a statute of limitations. Upon the publication of the notice as required by the statute, the holder of the certificate is bound to present his certificate to the bank. If he does so present the certificate, he is not required to receive payment thereon, nor is it declared that it shall become due, from which time the statute of limitations begins to run. He is simply required to hold up his hand and say, "I have this certificate," and for failure to do this, although he has had no actual notice of the order made, his contract is rescinded, and he has no claim under a contract for which he has paid a full consideration. Nor should the court hesitate to declare this statute void by reason of a single hardship in a particular case. Thousands of certificates are held by women, to whom the notice contemplated by the statute would never come, but whose property might be confiscated by unscrupulous assignors, who might swear that the certificate had been lost, and get from the bank the money that in truth belonged to the real holder of the certificate. The assignee of a certificate might go to Europe for a four-months trip, and come home to find his property confiscated.

The only case cited by the respondents immediately bearing upon the question here argued is the case of Vance v. Vance, 108 U. S. 514, 2 Sup. Ct. 854, 27 L. Ed. 808. It had been provided by the Civil Code of Louisiana that the property of a tutor (guardian) was tacitly mortgaged in favor of a minor as security for his administration. The Constitution of Louisiana, adopted in 1868, provided as follows:

"No mortgage or privilege shall hereafter affect third parties unless recorded in the parish where the property to be affected is situated. All tacit mortgages and privileges now existing in this state shall cease to have effect against third persons after 1 January, 1870, unless duly recorded. The General Assembly shall provide by law for the registration of all mortgages and privileges."

Upon the 8th of March, 1869, the Legislature of Louisiana enacted the necessary legislation to carry out the provision of the state Constitution. This provision of the Constitution was thereafter challenged by a minor who had become of age on the ground that it took from him a security, thereby impairing the obligation of his contract with his tutor. The Supreme Court there held that it in no way destroyed the contract between the minor and the tutor; that it was simply a recording act, making the secret lien void as against those who dealt with the tutor without knowledge thereof; and the court there followed prior authorities in the same court which authorized the enactment of recording acts affecting existing contracts for the protection of bona fide purchasers dealing with a party without knowledge of the secret lien. The act in question, however, is not for the protection of bona fide purchasers. The reasoning upon which the constitutional provision in the case cited was justified by the court:

is in no way applicable to the case at bar. A party has lost the
evidence of his right to recover. The penalty to the loser is no
greater than if the money itself had been lost. I can find no justifica-
tion in public necessity for the act in question.

It may be argued that the statute provides for the recovery upon
lost paper by a requirement that a bond may be given, and that the
statute in question is no more an impairment of the obligation of a
contract than the statute providing for the recovery upon a lost note.
But the right to recover upon a lost instrument upon the giving of
indemnity does not rest upon the statute. The right has always
existed in a court of equity to provide for the saving of the rights
of the owner of a lost instrument by the giving of indemnity. In
Rowley v. Ball, 3 Cow. 303, the right was recognized in a court of
equity, but was denied to a court of law, and the statute was en-
acted for the sole purpose of giving to a court of law the same power
to allow a recovery as existed without the statute in a court of equity.
See 2 Rev. St. (1st Ed.) p. 406, pt. 3, c. 7, tit. 3, §§ 75, 76, and note of
the revisors found in volume 3 of the Second Edition of the Revised
Statutes, p. 738. See, also, Throop's Code, § 1917, and his note.
The statute in question offers no indemnity to the party whose rights
are abrogated. It attempts to divest the owner of such a certificate
of his property upon a condition not named in the contract, in clear
contravention, as I think, of the rights guarantied to him by the
state and federal Constitutions. The question here arises upon a
certificate issued before the passage of the statute herein discussed.
An entirely different question might arise upon a certificate issued
after its passage, upon which it is unnecessary here to express an
opinion.

The order should therefore be reversed.

Final order reversed, with costs. All concur, except CHESTER, J., who
dissents, and KELLOGG, J., not voting.