**BEAUMONT PETROLEUM SYNDICATE et al. v. BROUSSARD et al.**

No. 2532.

Court of Civil Appeals of Texas. Beaumont.
Nov. 7, 1933.

Rehearing Denied Nov. 8, 1933.

Oliver J. Todd, of Beaumont, for appellants.

A. D. Lipscomb, of Beaumont, for appellees.

O'QUINN, Justice.

This is an appeal from an order of the Sixtieth district court of Jefferson county refusing an injunction to restrain or postpone from sale certain lands in Jefferson county, Tex., under an execution issued out of said court by virtue of a judgment and foreclosure of a vendor's lien on said lands.

August 9, 1923, the City National Bank of Beaumont sold and conveyed five certain tracts of land situated in Jefferson county, Tex., comprising some 1,665 acres to the Beaumont Petroleum Syndicate, a Texas corporation, for a consideration of $40,000, of which $15,000 was paid, and said syndicate executed and delivered to said bank its five certain vendor lien notes, each in the sum of $5,000, dated August 9, 1923, numbered 1 to 5, and payable to the order of said bank in one, two, three, four, and five years, respectively, from the date of execution, said conveyance and said notes retaining the vendor's lien on the land to secure the payment of said notes. The notes provided that they should bear interest from date until maturity at the rate of 7 per cent. and, after ma-

turity, if not paid when due, 8 per cent. interest on the principal and unpaid interest, and contained the usual 10 per cent. attorney's fee clause. The first two notes were duly paid. Notes 3 and 4 were not paid, and, by agreement, September 28, 1927, the dates of payment of said notes were advanced to August 9, 1928, the date upon which note No. 5 matured, thus making notes 3, 4, and 5 due on the same date. In said agreement the vendor's lien was expressly retained on the land. On September 21, 1928, the City National Bank, for a valuable consideration, by an instrument in writing assigned and transferred to J. E. Broussard said notes and lien. June 20, 1931, J. E. Broussard, by instrument in writing, assigned and transferred said notes and lien to the trustees of the Broussard Trust, a voluntary association composed of J. E. Broussard, C. E. Broussard, and J. E. Broussard, Jr. May 26, 1932, said trustees of said trust filed suit in the district court of Jefferson county, Sixtieth district, against said Petroleum Syndicate and its stockholders for judgment on said notes and foreclosure of the vendor's lien on said lands. In due course, judgment was rendered for plaintiffs, trustees of the Broussard Trust, in the sum of $19,172.96, for principal, interest, and attorney's fees, and foreclosing the vendor's lien. The land was advertised for sale under execution on said judgment, for July 4, 1933. Appellants, stockholders of said Beaumont Petroleum Syndicate, and defendants in the foreclosure suit, June 29, 1933, filed application with the Sixtieth district court in which the judgment of foreclosure had been rendered, for injunction to restrain said sale and to stay same for a period of 180 days, as provided by House Bill No. 231 (c. 102), enacted by the Forty-Third Legislature, known as the Texas Moratorium Law, and which became effective May 1, 1933 (Vernon's Ann. Civ. St. art. 2218b). Upon a hearing the injunction was refused, from which judgment this appeal was taken.

The provisions of said act thought to be material to the disposition of this case, are set out below:

"Sec. 1. From and after the effective date of this Act and during the period of time this Act is made effective as provided herein, in all suits or causes of action which are pending in any trial court exercising jurisdiction in this State on the effective date of this Act, and in all suits or causes of actions which may be filed within one hundred and eighty (180) days from and after the effective date of this Act and in which a judgment for the recovery of real property sought to be recovered, or wherein a recovery of real property is sought for a failure or omission to pay any indebtedness due thereon, or to foreclose any lien or liens thereon, the defendant shall have the right to a postpone-

ment or continuance thereof as herein provided and a stay of orders of sales or executions by complying with the conditions as hereinafter set forth, to-wit:

"(1) That the defendant file therein a sworn statement showing:

"(a) That the defendant is unable to pay said indebtedness and that the property of the defendant, if sold under an order of sale, or any other property of the defendant, if sold under execution, would probably sell for less than its reasonable market value, and/or less than its intrinsic value.

"(1a) That the lien sought to be foreclosed was not procured or obtained for the purpose of securing in part or whole any indebtedness for money or property procured by misrepresentation, fraud, defalcation or embezzlement.

"(b) That the rendition of a judgment as prayed for by plaintiff and the sale of the defendant's property under deed of trust or execution or order of sale would result in an unfair, unjust and inequitable financial injury to the defendant.

"(c) That the property upon which the lien is sought to be foreclosed is not being wasted, illtreated, mismanaged or destroyed and is in substantially as good condition as when the lien was first executed, and that the defendant has not, with the intent to defeat or delay the collection of the indebtedness or the enforcement of the lien, dissipated the property or the rents and revenue theretofore derived therefrom.

"(d) That the defendant is not in arrears in the payment of taxes for more than four (4) years since February 1, 1922, on the property involved in the suit.

"(e) That the defendant consent either to the appointment by the Judge or the Court of a disinterested party to collect all rents and revenues, derived from the property upon which the lien exists, during the period of postponement or continuance or stay of orders of sales or executions and to apply the same as a credit on the indebtedness, or deposit the same in the registry of the Court to await the final disposition of the case or to use, apply or dispose of the rents as the Judge may direct without the appointment of a disinterested party to collect the same.

"Upon the filing of such motion the Judge or Court before whom said suit or cause of action is pending, shall, before proceeding to trial on its merits, hear evidence in support of or against the facts alleged in said motion, and if it be made to appear to the Court that said allegations are probably true, the Court shall defer rendering judgment in said cause for as long a period or one hundred and eighty (180) days, nor shall any order of sale or execution issue until after the expiration of the time fixed by the Court; provided, however, that the Judge or Court shall have authority, upon further application at the end of the time to which cause has been postponed, but not after the expiration of two hundred (200) days from the effective date of this Act, if it reasonably appears that the same condition exists as in the first instance, to grant further extensions from time to time, but in no event beyond May 1, 1934.

"It shall be the duty of the Court in determining whether or not said allegations are true, and whether a postponement or continuance shall be granted, to take into consideration the financial condition of the parties, both plaintiffs and defendants, and the nature and character of the property, and the disposition likely to be made of the property if taken possession of by the plaintiff or retained by the defendant and the general economic conditions existing at the time of the hearing of the application.

"Sec. 3. The Judge or Court having jurisdiction of the subject matter, is hereby authorized to grant temporary injunctions at the instance of the debtor to prevent a sale of real property under execution, orders of sale of real property or under deeds of trust conveying lands as security for debt upon the same terms and conditions as is authorized by Section 1 of this Act and during the life of this Act.

"Sec. 4. Nothing contained in this Act shall prevent the Court or the Judge thereof, upon good cause shown, from granting such preliminary and ancillary remedies by injunction or otherwise, including receivership, in accordance with the provisions of the law and the usages of equity which may, in the discretion of such Court or Judge, appear to be necessary for the preservation and protection of the rights of parties and of property during the pendency of any litigation concerning the subjects herein mentioned.

"Sec. 11. All laws or parts of law in conflict with any of the provisions of this Act, are hereby suspended for the period of one hundred and eighty (180) days from and after the effective date hereof, and to May 1, 1934, in all cases where extensions have been granted to that date as provided by this Act, but no Statute is intended to be repealed and upon the expiration of two hundred (200) days from and after the effective date of this Act, it shall be of no further force and effect and any and all laws suspended during the effective period of this Act, shall immediately become operative and in full force and effect as effectively as if this Act had not been passed.

"Sec. 12. The fact that an extraordinary financial emergency and depression exists within this State and elsewhere, and that many citizens are threatened with destructive suits for the recovery of money and to the foreclosure of liens upon property and that it is difficult to secure supersedeas bonds, and by reason thereof imminent danger exists

whereby citizens may be subjected to distressing losses, and because thereof such suits or proceedings as provided in this Act should be permitted to be stayed or continued, for the period and under the circumstances as herein provided, and the fact that great and irreparable wrong and injury will be done unless immediate relief as aforesaid hereby be granted, creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days be suspended and the same is hereby suspended, and this Act shall take effect from and after its passage, and it is so enacted."

The pleadings of appellants were sufficient and met the provisions of the entire act to entitle them to the benefits of same if it is a valid law. The court below held the act to be invalid and so the only question to be determined is its constitutionality.

Appellees insist that the act is unconstitutional because, they say, it impairs the obligation of contracts, hence violates and is in contravention of section 16 of article 1 of the Constitution of the state of Texas, and of section 10 of article 1 of the Constitution of the United States; and deprives plaintiffs of their property without due process of law, and hence is in violation of the Fourteenth Amendment to the Constitution of the United States.

Section 10 of article 1 of the Constitution of the United States declares that no state shall "pass any * * * Law impairing the Obligation of Contracts." The Fourteenth Amendment to the Constitution of the United States provides, among other things, that no state shall deprive any person of property without due process of law.

Section 16 of article 1 of the Constitution of the state of Texas reads: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

■ Does the statute in question impair the obligation of the contract sought to be enforced? The obligation of a contract is the law which binds the parties to perform their agreement—that which by law binds the respective parties. Sturges v. Crowninshield, 4 Wheat. 122, 200, 4 L. Ed. 529. Many definitions of the term "obligations of contracts" have been enunciated by the different courts, but we think the above is a correct summation of them. The obligations thus protected are the reciprocal rights and remedies which the law, as applied to the agreement of the parties, confers upon them.

■■ In every contract there are two elements. The rights contracted for by the parties, and the remedy afforded by law for the enforcement of those rights. As to the rights secured by contract, no law can be passed by the Legislature either destroying or impair-

ing them, but such is not the rule as to the remedies for the enforcement of those rights, for no one has a vested right in a remedy. 6 R. C. L., p. 294, § 281; Fidelity Union Casualty Co. v. Farmers' & Merchants' Lmbr. Co. (Tex. Civ. App.) 43 S.W.(2d) 147; Treasurer v. Wygall, 46 Tex. 447, 457; Cooley on Constitutional Limitations (7th Ed.) 515. The Legislature may pass laws affecting remedies, and so long as the new law does not materially impair the remedy existing at the time the contract was made, it is valid. In other words, where a substantial remedy is left, or is provided by the new statute, no constitutional inhibition is breached. In Sturges v. Crowninshield, supra, Chief Justice Marshall said: "The distinction between the obligation of a contract, and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct."

In Edwards v. Kearzey, 96 U. S. 595, 608, 24 L. Ed. 793 (Justice Clifford at page 799), it is said: "Where an appropriate remedy exists for the enforcement of the contract at the time it was made, the State legislature cannot deprive the party of such a remedy, nor can the legislature append to the right such restrictions or conditions as to render its exercise ineffectual or unavailing. State legislatures may change existing remedies and substitute others in their place; and, if the new remedy is not unreasonable, and will enable the party to enforce his rights without new and burdensome restrictions, the party is bound to pursue the new remedy, the rule being that a State legislature may regulate at pleasure the modes of proceeding in relation to past contracts as well as those made subsequent to the new regulation."

And again: "Mere remedy, it is agreed, may be altered, at the will of the State Legislature, if the alteration is not of a character to impair the obligation of the contract; and it is properly conceded that the alteration, though it be of the remedy, if it materially impairs the right of the party to enforce the contract, is equally within the constitutional inhibition."

In DeCordova v. City of Galveston, 4 Tex. 470, Chief Justice Hemphill said: "A distinction has always been taken between the obligation of a contract, and the remedy for its enforcement; and it has never been doubted but that the Legislature may vary 'the nature and extent of the remedy, so that some substantial remedy be in fact left.' A State may, at pleasure, regulate the modes of proceeding in its Courts, in relation to past contracts, as well as future. It may, for example, shorten the period of time within which claims shall be barred by the statute of limitations; or exempt the necessary

implements of agriculture, or the tools of the mechanic, or articles of necessity in household furniture, from execution.—'Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy; to be exercised, or not, by every sovereignty, according to its own views of policy and humanity,' and as not impairing the obligation of the contract."

He further held: "But laws which affect the remedy, merely, are not within the scope of the inhibition, unless the remedy be taken away altogether, or encumbered with conditions that would render it useless or impracticable to pursue it. (Bronson v. Kinzie, 1 How. 315 [11 L. Ed. 143].) Or, if the provisions regulating the remedy, be so unreasonable as to amount to a denial of right, as, for instance, if a statute of limitations, applied to existing causes, barred all remedy, or did not afford a reasonable period for their prosecution; or if an attempt were made by law, either by implication or expressly, to revive causes of action already barred; such legislation would be retrospective within the intent of the prohibition, and would, therefore, be wholly inoperative."

See, also, Ætna Casualty & Surety Co. v. Woodward (Tex. Com. App.) 41 S.W.(2d) 674; Patton v. New Amsterdam Casualty Co. (Tex. Com. App.) 36 S.W.(2d) 1000; American Surety Co. of New York v. Axtell Co., 120 Tex. 166, 36 S.W.(2d) 715; Farmers' Life Ins. Co. v. Wolters (Tex. Com. App.) 10 S.W.(2d) 698.

Numerous cases from all the jurisdictions could be cited showing the rule, but we desist from the useless task.

■ While every contract embraces amongst its obligations the right to an enforced performance—a remedy—still this does not mean the particular remedies, processes, or tribunals as they existed when the contract was made. Tribunals for hearing and determining the cause may be changed. Texas Farm Bureau Cotton Ass'n v. Lennox (Tex. Civ. App.) 296 S. W. 325; Mexican National Ry. Co. v. Mussette, 86 Tex. 708, 26 S. W. 1075, 24 L. R. A. 642; March v. State, 44 Tex. 64; 12 C. J. § 568, p. 977. The period of limitation may be changed, lengthened, or shortened. Wilson v. Iseminger, 185 U. S. 55, 22 S. Ct. 573, 46 L. Ed. 804; Vance v. Vance, 108 U. S. 514, 2 S. Ct. 854, 27 L. Ed. 808; Home Ins. Co. v. Dick (Tex. Com. App.) 15 S.W.(2d) 1028; Farmers' Life Ins. Co. v. Wolters (Tex. Com. App.) 10 S.W.(2d) 698; Frank v. State Bank & Trust Co. (Tex. Com. App.) 10 S.W.(2d) 704. The rules of evidence may be varied. American Indemnity Co. v. McCann (Tex. Com. App.) 45 S.W.(2d) 174; Express Publishing Co. v. Hormuth (Tex. Civ. App.) 5 S.W.(2d) 1025 (writ refused); 12 C. J. p.

982, § 579. Remedies existing at the time of making the contract may be changed, altered, or abolished, and new ones given. Chicago, R. I. & P. Ry. Co. v. Cole, 251 U. S. 54, 40 S. Ct. 68, 64 L. Ed. 133; Patton v. New Amsterdam Casualty Co. (Tex. Com. App.) 36 S.W.(2d) 1000; Ætna Casualty & Surety Co. v. Woodward '(Tex. Com. App.) 41 S.W.(2d) 674. And there is abundant authority for the rule that the new or remaining remedy, if substantial, need not be so effective or advantageous as the old. 12 C. J. 1069, § 727. Chief Justice Taney, in Bronson v. Kinzie, 1 How. 311, 316, 11 L. Ed. 143, said: "Although a new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional."

■ Parties contract with reference to existing laws which determine and fix the obligations of the contract, the correlative rights and duties springing from it, and not to laws of mere procedure prescribing remedies. With reference to these (remedies) there is ordinarily no obligation arising, but the contract is made in contemplation of the power of the Legislature to change them. 9 Tex. Jur. p. 545, § 110. In order for an existing or specific remedy to be an obligation of the contract, it must have been contracted for and agreed to by the parties in the contract itself. In other words, a specific remedy provided by the contract itself cannot be lawfully changed, as to that contract, by legislation, because it constitutes a part of the contract. Standifer v. Wilson, 93 Tex. 232, 54 S. W. 898.

Discussing this question, Chief Justice Stayton, in International Building & Loan Ass'n v. Hardy, 86 Tex. 610, 26 S. W. 497, 498, 24 L. R. A. 284, 40 Am. St. Rep. 870, said: "The purpose of the parties in making the mortgage contract and in giving power to sell the mortgaged property, in accordance with the terms of the instrument, were twofold. The leading purpose of that contract was to give lien on the property described in it to secure debt due or to become due from one party to the other; and, if the contract had gone no further than to secure this right, there is no doubt that it would have been within the power of the legislature to change the remedy then existing for the enforcement of such a right through the courts in any respect that did not essentially affect the right secured. Notice for a longer period before sale or notice to be given in some manner other than that prescribed by law in force when the contract was made might have been required, or the time and place of sale might have been changed, without violating the right of either party under the contract; for the parties contract with reference to the

enforcement of rights through the courts, if this becomes necessary, and they must be understood to contract in view of the fact that the state has power to establish courts, to fix their jurisdiction and also to regulate procedure, and that this cannot be controlled by contracts persons may make. The contract, however, had in view, and by its terms gave and was intended to give to the creditor, a remedy through which it might enforce its right against the mortgaged property without resort to the ordinary remedies given by law, and it will be assumed that the contract which gave that remedy was valid when made. The constitutional provisions which forbid legislation, the effect of which would be to impair the obligation of contracts affecting property or pecuniary rights, are broad, and embrace every such contract, and, in the case stated, the question arises: Is a contract securing to a creditor right to a specific remedy, whereby he may enforce a pecuniary obligation without resort to the courts of the country, subject to such modification and changes as may lawfully be made in the ordinary remedies prescribed by law? We are of opinion that this should be answered in the negative; for, as before said, the contract in the one case secures the right of the parties as to the subject-matter of the contract, but looks for remedy to laws existing, or to such laws as may be subsequently enacted,—in fact contract with reference to the known power of the lawmaking department to make such changes in remedial laws as may be deemed beneficial, provided they be not such as impair the obligation of contract,—while, in the other, the very purpose of so much of the contract as secures a remedy the law does not give is to secure the specific remedy contracted for. In one case the specific remedy is the subject of contract, and parties, one or both, thus secure it because deemed more advantageous in enforcement of right than the remedies provided by law; while, in the other, the thing or right secured by contract is that which gives right to some remedy for enforcement of contractual obligation. By reason of the right the remedy operates upon persons or things, and, in the absence of contract for remedy, in such cases, parties subject themselves and property to such remedies as exist at the time the contract is made, and to such as subsequently may lawfully be given by law. That persons may contract for a remedy, lawful in itself but not given by law for enforcement of a right, will not be questioned; but such a contract will not prevent resort to any remedy given by law. If, however, a party desires to resort to a remedy existing only by contract, he must take it in accordance with the agreement that gives it; for the legislature has no power by subsequent law to change the contract. The existence of such a power would be, in effect, to make a contract for parties which the legislature has no power to do. While this is true, there is no doubt that parties may contract with reference to an existing law affecting the remedy; but, if the contract relates only to process and the manner of its execution, and not to something on which the process is to act, or like substantial thing, then the contract ought not to be held to affect the power of the legislature to change the remedy. It has been held that a change in the law, in such cases, if given effect, would not necessarily impair the obligation of contract."

Discussing this question, Cooley on Constitutional Limitations (7th Ed.) 405, says: "Such being the obligation of a contract, it is obvious that the parties in respect to it are liable to be affected in many ways by changes in the laws, which it could not have been the intention of the constitutional provision to preclude. There are few laws which concern the general police of a state, or the government of its citizens, in their intercourse with each other or with strangers, which may not in some way or other affect the contracts which they have entered into or may thereafter form. For what are laws of evidence, or which concern remedies, frauds and perjuries, laws of registration, and those which affect landlord and tenant, sales at auction, acts of limitation, and those which limit the fees of professional men, and the charges of tavern-keepers, and a multitude of others which crowd the codes of every state, but laws which may affect the validity, construction, or duration, or discharge of contracts. But the changes in these laws are not regarded as necessarily affecting the obligation of contracts. Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract; and it does not impair it, provided it leaves the parties a substantial remedy, according to the course of justice as it existed at the time the contract was made. * * ◊ It has accordingly been held that the laws changing remedies for the enforcement of legal contracts, or abolishing one remedy where two or more existed, may be perfectly valid, even though the new or the remaining remedy be less convenient than that which was abolished, or less prompt and speedy." Citing numerous cases showing the rule well established.

■■■ The Legislature has the unquestioned right in all cases to deal with purely legal remedies. This necessarily includes the right to determine the procedure of the courts which have the power to administer the remedy. The continuance of a civil cause is therefore a proper subject for legislative consideration in all cases. The grounds, terms, and time of such continuance necessarily pertain to the legal remedy.

The regulation of such matter is exclusively a legislative function. Such matter is not ordinarily attempted to be controlled by contract, and it is thought could not be. The time for which a continuance is granted is a matter for judicial determination according to legislative rules. Ordinarily, a continuance is until the next term of the court. In many, if not most, of our district courts this would mean a six months' postponement. Likewise, the issuance of an order of sale, or sale under execution, is a matter of legislative provision, and not of private convention—the manner and time of issuance of such writs is determined by the Legislature. These writs are a part of the legal remedy supplied by law. That being true, it necessarily follows that all matters of continuance and stay of execution or order of sale pertain wholly to the purely legal remedy and, as such, may be regulated at will by the Legislature. It is only where such legislative act so far transcends reasonable regulations as to amount to a destruction or an impairment of the implied remedy of enforcement that the act is forbidden.

■ We do not believe that it can be said that the act in question is such an unreasonable change or regulation of the existing legal remedy as to amount in law to an impairment of the implied contract for judicial enforcement. The effect of the act, at most, is merely to postpone for a reasonable time (180 days, and, at most, if extended, not to exceed 200 days from the effective date of the act) foreclosures upon real estate,- or sales under foreclosure (as in the instant case) of real estate for reasons of public policy deemed by the Legislature sufficient to warrant the delay. This in no just sense impairs the obligation of the implied contract for enforcement, for such implication is not for enforcement in any particular way or at any particular time.

The ordinary time for the issuance of an execution or order of sale is summarily fixed by the Legislature in any case. If a 20-day limit be allowed for issuance, and 30 days be allowed for the advertisement, as a matter of legislative discretion, by what authority or upon what reason can it be said that the Legislature, in the exercise of the same discretion, could not allow 60 days, 100 days, or 180 days, if the interest of the state demanded it? At what point of time would the courts draw a line? Would they draw a line short of that legislative act which would virtually deny the right of enforcement? We do not think so. Furthermore, it must not be overlooked that the instant case is one of ordinary sale of land and the retention of the vendor's lien on the land to secure the payment of notes given for part of the purchase price. The parties contracted for the statutory remedies for the enforcement of the obligation. No special remedy was contracted for, and therefore the obligation of the contract could be enforced only by resort to the courts under the remedies prescribed by law at the time the contract was made and at the time the contract was sought to be enforced.

It must be kept in mind that this case does not belong to that class of cases where a note has been given and a deed of trust executed on land to secure the payment of the note, and in the deed of trust the trustee is given power to sell the property without recourse to court procedure, if the debt is not paid as contracted. There the remedy (sale of the property without court procedure) is an express provision of the contract, and so not subject to impairment or change by legislative enactment affecting remedies. Neither does the instant case belong to the class of cases where a party executes a note and gives a lien on real estate to secure the payment of the note, but fails to meet his obligation, when due, and the holder of the note brings suit on the note, obtains judgment, and the land is sold under execution, and he buys in the property and receives a deed thereto and awaits the expiration of the period for redemption to have possession free from such right. It has been held that a law passed by the Legislature extending the time in which the property might be redeemed after sale further than was provided at the time of the sale, was invalid. The reason is that the remedy existing by law had been invoked and fully applied, and under the law and the facts title to the property vested in the purchaser, and his right to possession at the expiration of the time allowed for redemption at the time of the sale was a vested right.

We think the act in question, relating as it does only to the remedy for the enforcement of the contract, and being reasonable and leaving appellees a full and complete remedy, less only a short postponement of the actual remedy—sale under execution—that applied at the rendition of the judgment; and appellants offering to comply with all the terms of the act which protects and remunerates appellees in their rights concerning the property pending the postponement of final execution of the judgment, in no way impairs the obligation of the contract, and is therefore valid.

■ But if it can be said that the act in any way or to any extent impairs the obligations of contracts, such as are here under consideration, then considering the allegations of fact in appellants' sworn petition praying for relief under the act, and the recitations in the emergency clause of the act disclosing the unpropitious and distressing economic conditions existing generally throughout the country, as the grounds for its passage, we believe the act is constitu-

tional as a valid exercise of the police power of the state.

▇ While it has been found impossible to frame any definition of the police power that would absolutely indicate its limits by including everything to which it may extend and excluding everything to which it cannot extend, yet it may be said generally that the police power is an attribute of sovereignty inherent in the states of the American Union, and is not a grant derived from or under any written Constitution. It has been said that the very existence of government depends on it, as well as the security of social order, and that its exercise is proper to protect and promote the public safety, public health, public morals, public peace, and the general welfare. See 22 A. & E. Ency. of Law (2d Ed.) Police Powers, 6 R. C. L., p. 183, § 182 et seq.; 12 C. J., p. 904, §§ 412-415, 416, 417-425; 6 Words and Phrases, First Series, p. 5424 et seq.

▇ The general scope of the police power may be stated in the words of the well-recognized principle of constitutional law that persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state. The possession and enjoyment of all rights are subject to the police power, and property of every kind is held subject to those general regulations which are necessary for the common good and general welfare, including contract. 6 R. C. L. pp. 202, 203, §§ 198, 199, and authorities cited. It is fundamental that the state may establish regulations reasonably necessary to secure the general welfare of its people by the exercise of its police power, although the rights of private property are' thereby curtailed and freedom of contract is abridged. Chicago, B. & Q. R. Co. v. Illinois, 200 U. S. 561, 26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; Rast v. VanDeman & L. Co., 240 U. S. 342, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; American Coal Mining Co. v. Special Coal & Food Commission (D. C.) 268 F. 563. The legislative or police power is a dynamic agency, vague and undefined in its scope, which takes private property or limits its use when great public needs require, uncontrolled by the constitutional requirement of due process. Either the rights of the property and contract must, when necessary, yield to public convenience, advantage, and welfare, or it must be found that the state has surrendered one of the attributes of sovereignty for which governments are founded, and made itself powerless to secure to its citizens the blessings of freedom and to promote the general welfare. People ex rel. Durham Realty Corp. v. La Fetra, 230 N. Y. 429, 130 N. E. 601, 16 A. L. R. 152, 159, writ of error dismissed by United States Supreme Court, People of State of New York ex rel. Brixton Operating Co. v.

La Fetra, 257 U. S. 665, 42 S. Ct. 47, 66 L. Ed. 424.

Judge Cooley discussing the police powers of a state invoked in emergency legislation, in relation to the obligations of contracts, at page 833, says: "The occasions to consider this subject in its bearings upon the clause of the Constitution of the United States which forbids the States passing any laws impairing the obligation of contracts have been frequent and varied; and it has been held without dissent that the clause does not so far remove from State control the rights and properties which depend for their existence or enforcement upon contracts, as to relieve them from the operation of such general regulations for the good government of the State and the protection of the rights of individuals as may be deemed important. All contracts and all rights, it is declared, are subject to this power; (a) and not only may regulations which affect them be established by the State, but all such regulations must be subject to change from time to time, as the general well-being of the community may require, or as the circumstances may change, or as experience may demonstrate the necessity."

In a footnote (a) he cites numerous decisions, and quotes from Chief Justice Marshall, in Dartmouth College v. Woodward, 4 Wheat. 518, 629, 4 L. Ed. 629, sustaining the rule.

▇ The sole purpose of the act in question was to relieve, as far as reasonably could be done, the distressing circumstances and conditions resulting from and growing out of the widespread and serious economic depression which had been growing in severity and effect for several years prior to the passage of the act. The emergency clause of the act (set out in the first part of this opinion) recites the reason and grounds for the enactment of the law. The facts found by the Legislature as a basis for the act were and are true. Prior to the beginning of the depression, business activity had been great. Property, and especially real estate, was, in market value, at its height. Loans secured by liens on real estate were easily obtained. Thousands of homes had been purchased and much of the purchase price secured by liens on the property. Business deals almost innumerable, wherein loans of money secured by liens on real estate, were made. The financial depression followed, multitudes of persons were thrown out of employment, business of practically all kinds was stagnated, by reason of which inability to meet obligations resulted and refinancing the debts was impossible because further loans could not be obtained. Sales of the burdened property could not be made because no cash market was available, and the market value of the property slumped to almost the vanishing point. The meeting of obligations was impossible. Many thousands of persons were los-

 1001

ing their homes, upon which in most instances much had been paid, and property pledged in business transactions, which at the time of its pledging was "gilt edged" security, but which because of the economic conditions had shrunk to practically no cash value, was threatened with complete loss by foreclosure proceedings. The owners of burdened property, because of the economic conditions existing, were thus made helpless to save their property or any portion of it, resulting in widespread loss of property, confusion, distress, and in many sections of the country, verging upon unlawful resistance to legal proceedings, thus threatening the public peace, and resulting adversely to the public prosperity and the general welfare. That these conditions actually existed, countrywide, was and is a matter of common knowledge, and further witnessed by the strenuous and supreme efforts being made by the National Congress and Administration to turn the tide of economic chaos back to normalcy and end conditions pressing upon the people worse than war. This being true, the emergency existed and the police power of the state was properly invoked and exercised by the Legislature in the passage of the act in question. People ex rel. Durham Realty Corp. v. La Fetra, 230 N. Y. 429, 130 N. E. 601, 16 A. L. R. 152, writ of error dismissed by the United States Supreme Court, People of State of New York ex rel. Brixton Operating Co. v. La Fetra, 257 U. S. 665, 42 S. Ct. 47, 66 L. Ed. 424; Block v. Hirsh, 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, 16 A. L. R. 165; Marcus Brown Holding Co. v. Feldman, 256 U. S. 170, 41 S. Ct. 465, 65 L. Ed. 877; Levy Leasing Co. v. Siegel, 258 U. S. 242, 42 S. Ct. 289, 66 L. Ed. 595; Blaisdell v. Home Bldg. & Loan Ass'n (Minn.) 249 N. W. 334, 86 A. L. R. 1507.

We do not deem it necessary to state the facts involved in, or to quote from, the holdings in the above-cited cases, but think it sufficient to say that they support the principles announced in our holdings herein, and they announce and establish the modern judicial doctrine ruling constitutional questions affecting the exercise of the police power of a state in emergency legislation.

 The act under consideration, from the title to the emergency clause inclusive, is intended to be temporary. Its purpose is clearly expressed, the life of the act is for one year. No old law is by its terms repealed, but to the contrary declared to be only suspended, and at the expiration of the life of the involved act to become immediately operative and in full force and effect. The postponements provided are certain and reasonable in time—180 days in the first instance, and, if further extended, not to exceed 200 days from the effective date of the act, and the relief sought, to be granted upon hearing and at the discretion of the court. It may not be granted as a matter of right. The act amply provides for the preservation and protection of the rights of the parties and the preservation of the property during the pendency of the suspension or postponement.

The authorities (particularly the earlier ones) bearing upon the questions here involved are in hopeless conflict, but law, like the affairs of nations, grows and expands—becomes less "hide-bound" and more liberal in its interpretations, in order to meet and justly serve and protect the rights of the public, and to meet and overcome emergencies and hurtful conditions that, at times, arise to plague the public. The maxim "pro bono publico suprema lex"—the good of the public is the highest law—should ever be kept in mind, for that is the prime purpose of all government, and is the vital principle of the police power of the state, inherent in the state, and ever to be exercised when the necessity arises. As was said by Professor Feller, in his admirable article in the May, 1933, number of the Harvard Law Review (writing on moratory legislation), "The legal armory is plentifully furnished with precedents either for or against the constitutionality of such legislation. In the last analysis the choice to be made among conflicting precedents and principles will depend upon the sensitiveness of the court to the dangers threatening the general economic structure."

For the reasons discussed, we hold the act to be constitutional. The judgment is reversed and the cause remanded. It is our further order that the injunction heretofore granted by us in this case restraining the clerk of the district court of Jefferson county from issuing orders of sale against appellants and Beaumont Petroleum Syndicate at the request of appellees and further restraining appellees from advertising for sale the property in issue and further restraining the sheriff of Jefferson county from selling the property in issue under orders of sale issued at the request of appellees be and the same shall remain in full force and effect pending a final hearing of this cause on its merits in the lower court; however, it is to be understood that this order shall not in any way impair or limit the discretion vested in the trial court by the provisions of the Moratorium Act in deciding this case on its merits.