## STATE v. RAPHAEL CARMENA.

189 N. W. (2d) 191.

August 13, 1971—No. 42707.

---

[4] To the same effect, see State v. Clark, 291 Minn. 79, 189 N. W. (2d) 167.

*Bonner & Nissen* and *J. Frederic Nissen,* for appellant.

*George M. Scott,* County Attorney, and *Douglas X. Juneau,* Assistant County Attorney, for respondent.

OTIS, JUSTICE.

This is an action to establish paternity. The principal question is whether the Minnesota court has jurisdiction. We hold that it does.

The complaint alleges that the mother, Karin Grafin von der Schulenburg, conceived a male child in Stauffen, West Germany, on or about March 3, 1965, and that defendant, Raphael Carmena, a Spanish national, now residing in Minnesota, was the father of the child. The child was born in Greenwich, Connecticut, November 30, 1965. The mother and child are now residents of Cork, Ireland. The putative father is a physician studying medicine at the University of Minnesota.

These proceedings were instituted on behalf of the mother by the county attorney of Hennepin County pursuant to Minn. St. 1969, § 257.19. Defendant was required to post a bond of $500 under Minn. St. 1969, § 257.21. He moved the court for an order dismissing the action on the grounds, first, that the court had no jurisdiction over the subject matter, and second, that the county attorney had no authority to represent the complaining witness. The trial court denied the motion, and defendant appeals from that order.

■ Section 257.19 is set out in full in the appendix. It expressly permits proceedings to be instituted in the county where the alleged father resides and imposes on the county attorney the duty of prosecuting the action "if the complaint seems to be justified."

We have no difficulty in finding that the court has jurisdiction over the subject matter. As the Connecticut Supreme Court of Errors said in Pelak v. Karpa, 146 Conn. 370, 373, 151 A. (2d) 333, 335:

"* * * Were this statutory obligation not enforceable in our courts against a resident defendant father, regardless of the residence of the mother and child, this state would become a refuge for fathers seeking to avoid assisting in the support of their illegitimate children."

Defendant argues that Minnesota authorities do not have the facilities for supervising the payment of support which the Minnesota court may require for use of the child. We are not here concerned with the mechanics of fixing and enforcing support or its distribution if defendant is found to be the father of the child. The immediate question is whether paternity can properly be litigated in the Minnesota courts. Once that matter is resolved, if defendant is found to be the father, the enforcement of the obligation to support will depend upon defendant's residence.

Our views are in accord with the weight of authority.[1] Restatement, Conflict of Laws, § 455, provides:

"A statute of the state of domicil of the father of a minor bastard child will be there applied to compel him to contribute to the support of the child, irrespective of where the mother is domiciled, unless the statute provides otherwise."[2]

---

[1] 10 Am. Jur. (2d) Bastards, § 77; Annotation, 57 A. L. R. (2d) 689.

[2] Restatement, Conflict of Laws, § 455, is followed by the following *Comment:*

"*a. Rationale.* Whether a bastardy statute is criminal or civil in

Defendant relies on Feyler v. Mortimer, 299 N. Y. 309, 87 N. E. (2d) 273.[3] That case, however, was construing a statute which in the court's opinion did not authorize the adjudication of paternity if the mother was not a resident of New York or one of the United States. Subsequently, the New York statute was amended to read much as ours does, permitting proceedings to be brought where the putative father resides. In Urbancig v. Pipitone, 23 App. Div. (2d) 193, 259 N. Y. S. (2d) 625, the defendant argued that, since the child was not likely to become a public charge in New York because he was a resident of Canada, the court had no jurisdiction over the matter. Defendant makes a similar argument here. The New York court rejected this argument in the following language (23 App. Div. [2d] 193, 196, 259 N. Y. S. [2d] 625, 629):

"* * * Whatever misunderstanding has arisen concerning the rule is occasioned by insistence that only one or another purpose is served by the bastardy statutes, namely, to impose a penal sanction on those who father illegitimate children or to prevent burdens upon the local relief rolls where the child is found. The truth is that in addition to these purposes the rule depends upon a personal status that a father bears to his children carrying with it the incident obligation to support. * * *

*     *     *     *     *

"* * * This State is concerned, therefore, with its domiciliaries or residents supporting their children. This is so whether

nature, it represents the exercise of the state's police power either to punish misconduct or to impose the onus of supporting a child upon its natural parent to prevent the child becoming a dependent upon society. Therefore, the state of domicil of the father of a minor bastard child has legislative jurisdiction to provide for the imposition upon him of the duty to support the child or to contribute to its support, whether the child was born within the state or whether the mother or the child or neither is domiciled there. The state of the domicil of the father also has judicial jurisdiction to make an order, pursuant to the statute, that the father contribute to the child's support (see § 79)."

[3] Cf. Duerr v. Wittmann, 5 App. Div. (2d) 326, 171 N. Y. S. (2d) 444.

or not it also be a condition that the statutes of the jurisdiction in which the child is resident or where the events occurred also so provided."

■ This leads us to the second and more troublesome question of whether the county attorney is authorized to institute these proceedings on behalf of the mother, or whether she must retain her own counsel. The parties agree that the mother is not indigent. We have in a number of cases held that the statute is designed to require the father to indemnify society against the expense of supporting the child. State v. Nestaval, 72 Minn. 415, 416, 75 N. W. 725; Reilly v. Shapiro, 196 Minn. 376, 381, 265 N. W. 284, 287. See, also, Mr. Chief Justice Knutson's dissent in State v. Sax, 231 Minn. 1, 22, 42 N. W. (2d) 680, 692.

Minn. St. 1969, § 257.18, authorizes the county board or the commissioner of public welfare to initiate proceedings to establish paternity, and § 257.19 confers that right on the mother. Both sections, however, contain substantially the same provision, expressed in § 257.19 as follows:

"* * * Such complaint shall be filed and further proceedings had either in the county where the woman resides or in the county where the alleged father of the child resides or in the county where the child is found, if it is likely to become a public charge upon such county."

As we construe § 257.19, the proceedings which it authorizes may be brought by the county attorney only "if it [the child] is likely to become a public charge upon such county." It appears that the mother is not indigent but, on the contrary, is employed in Ireland. Furthermore, it is obvious that her child is not likely to become a public charge in Minnesota inasmuch as neither has ever resided here nor intends to do so. We therefore hold that the county attorney is not authorized to act in their behalf.

This is not to say, however, that the court thereby loses jurisdiction. The fact that the county attorney was not authorized to institute the action is not a jurisdictional defect which renders

the process served on defendant void. However, under the circumstances here present it is incumbent upon the mother to retain her own counsel, and proceedings will be held in abeyance until a substitution is effected. The matter is accordingly remanded for that purpose. The order denying defendant's motion to dismiss is otherwise affirmed.

Remanded with directions.

No costs shall be allowed to either party.

APPENDIX

Minn. St. 1969, § 257.19:

"On complaint being made to a justice of the peace or a municipal court by any woman who is delivered of an illegitimate child, or pregnant with a child which, if born alive, might be illegitimate, accusing any person of being the father of such child, the justice or the clerk of the court shall take the complaint in writing under her oath and thereupon shall issue a warrant, directed to the sheriff or to any constable of the county, commanding him forthwith to bring such accused person before such justice or court to answer such complaint; which warrant may be executed anywhere within the state. Such complaint shall be filed and further proceedings had either in the county where the woman resides or in the county where the alleged father of the child resides or in the county where the child is found, if it is likely to become a public charge upon such county. It shall be the duty of the county attorney, if the complaint seems to be justified, to prosecute such actions and he shall institute appropriate proceedings for the enforcement of orders of the court. The county attorney may, on the written request of the defendant, file such complaint in the district court accompanied by the written request and a waiver by the defendant of his right to a preliminary examination. The county attorney may then bring the defendant before the judge of the court at any time for the adjudication of the paternity of such child and the making of an order for its support."