(No. 47738.—
(No. 48002.—

THELMA L. CESSNA, Appellee, v. RAYMOND MONT-GOMERY, Appellant.—DONNA MALONE, Appellant, v. McCARTHY DUNLAP, Appellee.

*Opinion filed March 18, 1976.*

CREBS; J., took no part.

No. 47738.—

John T. Phipps, of Champaign, and Samuel H. Taylor, of Lawrenceville, for appellant.

Robert L. Douglas, of Robinson, for appellee.

No. 48002.—

Mark Pettit, Jr., Robert H. Smith, and Gary H. Palm, of the Mandel Legal Aid Clinic, of Chicago, and Mark C. Zaander (law student), for appellant.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, Dale W. Broeder, and Jack L. Uretsky (law student), of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This appeal arises from two independent actions by mothers seeking to establish the paternity of their illegitimate children. Both complaints were dismissed in the trial court because brought more than two years after the birth of the children (Ill. Rev. Stat. 1973, ch. 106 3/4, par. 54). Plaintiff in case No. 47738 appealed from the Lawrence County circuit court's order of dismissal, and the Appellate Court for the Fifth District reversed and remanded, holding the two-year limitation period unconstitutional (*Cessna v. Montgomery* (1975), 28 Ill. App. 3d 887). We allowed defendant's petition for leave to appeal. Plaintiff in case No. 48002 also appealed from the dismissal of her suit by the Cook County circuit court. We allowed the defendant's motion to transfer the appeal to this court under Rule 302(b) (58 Ill.2d R. 302(b)), and the cases were consolidated for argument and opinion.

In case No. 47738, Thelma Cessna charged Raymond Montgomery with fathering her child. At a pretrial hearing to determine the existence of sufficient cause to proceed with the action, plaintiff testified that she and defendant had sexual relations regularly over a period of five years before the child was born on July 25, 1970. She continued to see defendant after the child's birth, and she and

defendant lived together from July to October, 1972, when he left. Plaintiff filed her complaint the following March. Plaintiff further testified that defendant occasionally contributed to the support of her child, bought groceries, and paid utility bills for the household. Plaintiff and her 18-year-old daughter testified the child called defendant "Daddy Raymond," and that defendant encouraged her to do so because, he said, "she was his." At the close of the evidence, the court found the proceeding was barred by the statute of limitations, and granted defendant's motion for dismissal.

In case No. 48002, Donna Malone charged McCarthy Dunlap with fathering her child. She asserted that for three and one half years after her daughter's birth on March 4, 1970, defendant held himself out as the child's natural father. He admitted paternity in a signed and witnessed writing the day before the child was born, and is named as the father on the birth certificate. Defendant supported the child until September, 1973. Approximately six months after defendant discontinued support, plaintiff filed this action. She alleges in her complaint that the two-year limitation period violates due process and equal protection, and, in the alternative, that defendant should in any event be estopped from asserting the limitation period as a defense since his conduct in supporting the child induced her belief that a paternity action was unnecessary. The trial court disagreed, and dismissed the action.

We note preliminarily that while the issues and arguments are not identical in both cases, we elected to consolidate them and our analysis and holdings will apply to both.

Section 2 of the Paternity Act provides that, once paternity is established, a father must support his illegitimate children to the same extent as his legitimate children. (Ill. Rev. Stat. 1973, ch. 106 3/4, par. 52.) A paternity action may be instituted under section 4 of the Act (Ill.

Rev. Stat. 1973, ch. 106 3/4, par. 54), which provides in pertinent part:

> "A proceeding to establish the paternity of a child born out of wedlock and to establish and enforce liability for its support, maintenance, education and welfare shall be instituted in the circuit court. Such action may be instituted only on the filing of a complaint in writing (a) by the mother of a child born out of wedlock, or (b) by a woman who is pregnant with child, which, if born alive, may be born out of wedlock. The complainant, under oath or affirmation, shall accuse a person of being the father of such child. *** No such action may be brought after the expiration of 2 years from the birth of the child. However, where the person accused has acknowledged the paternity of the child by a written statement made under oath or affirmation or has acknowledged the paternity of such child in open court, prosecution may be brought at any time within 2 years from the last time such acknowledgment was made or within 2 years from the last time the person accused contributed to the support, maintenance, education and welfare of the child subsequent to such acknowledgment. The time any person so accused is absent from the State shall not be computed."

Plaintiffs contend that section 4 denies equal protection to an illegitimate child because his right of support from his natural father is conditioned on establishing paternity within two years, absent formal acknowledgment, while the support right of a legitimate child is not conditioned at all. Plaintiffs also urge the related contention that section 4 denies both equal protection and due process to the illegitimate child because his support right may be terminated for conditions over which he has no control, particularly his mother's delay in bringing suit. Section 4 does not authorize a child to bring a paternity suit himself, by next friend or guardian; nor does it specifically authorize a State's Attorney to file suit on his own initiative.

Plaintiffs primarily rely on several Supreme Court decisions which have invalidated, on equal protection

grounds, statutory distinctions between legitimate and illegitimate children. Among the cases are *Levy v. Louisiana* (1968), 391 U.S. 68, 20 L. Ed. 2d 436, 88 S. Ct. 1509, and *Glona v. American Guarantee & Liability Insurance Co.* (1968), 391 U.S. 73, 20 L. Ed. 2d 441, 88 S. Ct. 1515. The court in *Levy* voided an interpretation of a wrongful death statute which denied illegitimate children a cause of action for the death of their mother, and in *Glona* reversed an interpretation of the same statute which precluded a mother from recovering for the wrongful death of her illegitimate child. In *Levy,* the court expressed an extreme sensitivity regarding issues concerning basic civil rights. (391 U.S. 68, 71, 20 L. Ed. 2d 436, 439, 88 S. Ct. 1509, 1511.) Four years later the court reaffirmed the *Levy* reasoning in *Weber v. Aetna Casualty & Surety Co.* (1972), 406 U.S. 164, 172, 31 L. Ed. 2d 768, 777, 92 S. Ct. 1400, 1405. The court there held that a State could not constitutionally deny to dependent unacknowledged illegitimate children workmen's compensation benefits that accrued to dependent legitimate children as a result of the death of their natural father. In so holding, the court. announced a dual test essential to the evaluation of distinctions based on an illegitimacy status: What legitimate State interest does the classification promote? What fundamental personal rights might the classification endanger? (406 U.S. 164, 173, 31 L. Ed. 2d 768, 777-78, 92 S. Ct. 1400, 1405.) The court concluded that, on balance, the State's legitimate interest in facilitating difficult problems of proof was insufficient to justify the classification created, where dependency on the father, not legitimacy, was the basis for statutory recovery. But no reference to *Weber* would be adequate which failed to note that the father of the unacknowledged illegitimates was prevented by Louisiana law from acknowledging them and that the fact this barrier was absolute accounted for, at the least, the concurrence of Mr. Justice Blackmun.

After *Weber* the court decided *Gomez v. Perez* (1973), 409 U.S. 535, 35 L. Ed. 2d 56, 93 S. Ct. 872, which relates more directly to the issue in this appeal. Although the trial court had found that defendant was the natural father of an illegitimate child, the court concluded the father owed the child no legal obligation of support. The Supreme Court held, however, that "once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother." (409 U.S. 535, 538, 35 L. Ed. 2d 56, 60, 93 S. Ct. 872, 875.) The court recognized "lurking problems" with respect to proof of paternity, but determined they could not be made into an "impenetrable barrier" to shield otherwise invidious discrimination. (409 U.S. 535, 538, 35 L. Ed. 2d 56, 60, 93 S. Ct. 872, 875.) It seems clear that a compelling consideration was the total absence from Texas law of any provision for paternal support of illegitimates. *Gomez* was followed by two cases whose holdings are not particularly useful in resolving the present appeal; yet they demonstrate the court's concern for the rights of illegitimate children. In neither case was the unconstitutional discrimination against illegitimates overwhelmingly evident. In *New Jersey Welfare Rights Organization v. Cahill* (1973), 411 U.S. 619, 36 L. Ed. 2d 543, 93 S. Ct. 1700, the court examined a State-aid program for poor families which limited its benefits to married couples with minor children. Finding the benefits equally indispensable to the health of legitimate and illegitimate children, the court invalidated the statute because the practical effect of the definition of eligibles was to deny benefits to illegitimates. Finally, in *Jimenez v. Weinberger* (1974), 417 U.S. 628, 41 L. Ed. 2d 363, 94 S. Ct. 2496, the court struck down a statute that discriminated between two classes of illegitimate children, rather than between legitimates and illegitimates, noting

that one class of illegitimates was conclusively denied benefits resulting from the disability of the father. Although the court declined to characterize illegitimacy as a "suspect classification," it rejected an analytical approach that would uphold a statute if any state of facts reasonably may be conceived to justify it.

In *Labine v. Vincent* (1971), 401 U.S. 532, 28 L. Ed. 2d 288, 91 S. Ct. 1017, the court upheld a statutory differentiation between legitimate and illegitimate children. The approved statute denied even acknowledged illegitimate children the right to share in their fathers' intestate property. The court observed that the statute imposed no insurmountable barrier to the child since the father could either have married the mother, thus legitimatizing the child, or included the child in a testamentary distribution. We have recently followed *Labine (In re Estate of Karas* (1975), 61 Ill.2d 40), emphasizing the broad discretion of a State to regulate the disposition at death of property within its borders, and the potential problems of stale or fraudulent claims.

It is important to emphasize that there is here no problem of discrimination in a child's right to support from its father. The Paternity Act, as earlier noted, provides for the illegitimate support rights equal to those of the legitimate—once paternity is established. (Ill. Rev. Stat. 1973, ch. 106 3/4, par. 52.) This provision is in complete accord with *Gomez.* Our cases, however, do not involve an issue of the right to support; it is only the question of paternity which is not settled and directly in issue. That proof of paternity places a burden on illegitimate children not shared by legitimate children is, of course, true; it is also unavoidable. (H. Krause, Illegitimacy: Law and Social Policy 82 (1971); Note, *Illegitimacy and Equal Protection,* 49 N.Y.U.L. Rev. 479, 511 (1974).) Illegitimate children differ fundamentally from legitimate children in that at birth they have no legal

relationship to their natural father. In the language of equal protection analysis, legitimate and illegitimate children are not similarly situated classes. It is not only entirely reasonable but essential that the State require proof of the paternity of illegitimates as a condition to asserting an otherwise equal support right. The question is whether the method provided by our Paternity Act for establishing paternity is constitutionally adequate.

Relying on *Gomez*, defendants argue that our Paternity Act provisions are valid because they provide the means of establishing the illegitimate's right to equal support, the absence of which in Texas law was condemned in *Gomez* as an "insurmountable barrier." Insurmountability, however, while of major importance, may not be the sole test of constitutionality, for *Weber* indicates that unlawful discrimination may exist even though illegitimates are not broadly or absolutely barred. (406 U.S. 164, 172, 31 L. Ed. 2d 768, 777, 92 S. Ct. 1400, 1405.) As we interpret *Gomez,* the court there held that a State's interest in alleviating difficult problems of proof cannot justify imposing an absolute barrier to paternal support of illegitimates; they must be afforded a chance to prove paternity. This appeal, therefore, picks up where *Gomez* left off. The broad question here is to what extent a State may limit or burden the right of an illegitimate child to bring a paternity action. While the issue may be styled as one of substantive due process rather than equal protection, the labeling is of little assistance, for our function remains the same. We must decide if the statute is reasonable, after evaluating the competing interests. To paraphrase the *Weber* formulation: What legitimate State interests does the statute promote? What fundamental personal rights might the statute endanger?

Plaintiffs' first objection to the statute is directed to the two-year limitation period and the fact that, if a paternity suit is not brought within two years of birth, the

illegitimate child is thereafter barred from asserting his undeniably important right to support from his natural father. Plaintiffs imply that any limitation period is inconsistent with due process. We disagree. No Supreme Court case has indicated, and *Gomez* cannot be read to require, that illegitimates be given an unrestricted right throughout their minority to bring a paternity action. The State has a legitimate interest in preventing the litigation of stale or fraudulent claims. (*Jimenez v. Weinberger* (1974), 417 U.S. 628, 636, 41 L. Ed. 2d 363, 370, 94 S. Ct. 2496, 2501.) The State of Illinois Family Study Commission has concluded, even with the two-year limitation period, that paternity actions are beset with coercion, corruption and perjury. (Report and Recommendations to the 76th General Assembly, at 55 (1969).) It may well be that the longer the period between birth and suit the greater the possibility of fraud. At the very least, a defendant's problems of proof are substantially increased. In our judgment the General Assembly, in order to promote the State's legitimate interests, may establish any limitation period it deems appropriate so long as it is not so short as to be tantamount to the impenetrable barrier proscribed in *Gomez*. (*Cf. Trustees of Schools v. Batdorf* (1955), 6 Ill.2d 486, 493; 51 Am. Jur. 2d *Limitation of Actions* sec. 12 (1970).) In our opinion a two-year limitation is not impermissibly brief; and, in any event, the fact that the support right potentially forfeited is an important one does not authorize this court to select a longer period. We could only remove the limitation altogether, and the Constitution does not in our judgment compel that result. Nor is section 4 unreasonable because of its provision tolling the two-year period while defendant is absent from the State. (Ill. Rev. Stat. 1973, ch. 106 3/4, par. 54.) It can be argued that the tolling provision defeats the permissible State interest in preventing stale claims since suit could potentially be brought many years after the child's birth. A similar provision applies, however, to

personal actions generally, and is indistinguishable from the one in the Paternity Act. (Ill. Rev. Stat. 1973, ch. 83, par. 19.) We see nothing in the tolling of the limitation period during defendant's absence from the State which appreciably affects its interest in eliminating stale or fraudulent claims.

Plaintiffs' second, and more troublesome, objection is that the operation of the statute can bar the child's support right through no fault of its own. Since only the mother may bring a paternity suit, the child is prejudiced by the mother's inaction.

The question, of course, is whether authorizing only the mother to bring suit unreasonably hinders the child's opportunity to secure support from his natural father. Obviously, the action must be brought by some person on the child's behalf, for the child cannot do so himself within the limitation period. And, we note parenthetically, it is within the competence of the legislature to enact a limitation period not tolled during minority. *Vance v. Vance* (1883), 108 U.S. 514, 27 L. Ed. 808, 2 S. Ct. 854; *Pittman v. United States* (9th Cir. 1965), 341 F.2d 739; *Johnson v. Industrial Com.* (1972), 53 Ill.2d 23; *In re People in Interest of L. B.* (1972), 179 Colo. 11, 498 P.2d 1157, *cert. denied,* 410 U.S. 976, 36 L. Ed. 2d 173, 93 S. Ct. 1497; *Shaw v. Zabel* (1974), 267 Ore. 557, 517 P.2d 1187; 51 Am. Jur. 2d *Limitation of Actions* sec. 182 (1970). Contra, *Perez v. Singh* (1971), 21 Cal. App. 3d 870, 97 Cal. Rptr. 920.

Possible legislative alternatives would include authorizing an action by a next friend or guardian. Plaintiffs argue that under no circumstances should the mother be permitted to sue on behalf of the child since their interests are potentially adverse. (See H. Krause, Illegitimacy: Law and Social Policy 113, 151-52 (1971); Note, *Illegitimacy and Equal Protection,* 49 N.Y.U.L. Rev. 479, 530 (1974); Gray & Rudovsky, *The Court Acknowledges the Illegitimate: Levy v. Louisiana and Glona v. American Guarantee & Liability Insurance Co.,* 118 U. Pa. L. Rev. 1, 25

(1969).) Her continuing fondness for the father or her reluctance to publicly reveal her indiscretion could result in a decision to forego an otherwise viable suit. We do not deny this possibility exists. Yet, plaintiffs' argument assumes that the child's interest is always best served by prompt suit against the father. Society still regards an illegitimate birth as something of a scandal, however, and the best interests of the child in a particular case may not always lie in the direction of public action against the natural father. It seems to us that the mother is ordinarily best positioned to make this difficult decision. Moreover, once a decision has been made to file an action, the interests of mother and child substantially coincide. Support for this conclusion is to be found in *Pittman v. United States* (9th Cir. 1965), 341 F.2d 739, where the court held a minor's tort claim against the government could constitutionally be barred after two years although he had no guardian *ad litem,* and despite a claimed conflict of interest that may have caused the father to subordinate his son's interest. The court specifically rejected plaintiff's contention that his right was meaningless because he could not act for himself during his minority.

In our judgment the General Assembly could reasonably conclude that the support right of an illegitimate child is best protected by requiring the action to be brought by the mother, and that the potential harm to putative fathers defending stale claims is, on balance, greater than the potential harm to illegitimate children whose support right is forfeited by the mother's inaction. The failure to bring a paternity suit, of course, forecloses only the right to support from the natural father. Still available are support from the mother and from public funds, if necessary. We accordingly hold section 4 of the Paternity Act is not vulnerable to the attacks here made upon it. *In re People in Interest of L. B.* (1972), 179 Colo. 11, 498 P.2d 1157, *cert. denied,* 410 U.S. 976, 36 L. Ed. 2d 173, 93 S. Ct. 1497.

Plaintiffs' additional contentions that mothers of

illegitimate children are denied equal protection because they can sue for support only if they establish paternity within two years, whereas mothers of legitimates may sue for support at any time during the child's minority, and that mothers of illegitimates are denied equal protection because they have automatic support obligations, while fathers of illegitimates have this obligation only if paternity is established within two years, wholly ignore, as earlier mentioned, that an illegitimate child has no fixed legal relationship to its father at birth. Since that relationship must be proved, and since we have determined the two-year limitation period is reasonable, we find no constitutional infirmity. Furthermore, since the mother controls the filing of the paternity action, any disadvantage that may accrue to her may well be the result of her own delay or inaction. Nor is it entirely irrelevant that her status as the mother of an illegitimate child is rarely involuntarily incurred.

Plaintiffs also argue that a father can readily escape an 18-year support obligation merely by voluntarily supporting his illegitimate child for two years, since the mother is unlikely to initiate a paternity suit while the father is providing support. If the father discontinues support after two years, suit is barred. The only statutory exception occurs if the father acknowledges paternity in a written statement under oath or in open court. (Ill. Rev. Stat. 1973, ch. 106 3/4, par. 54.) Plaintiffs urge that if the putative father, by his actions, lulls the mother into a false sense of security, he should be estopped from asserting the two-year limitation period as a defense to a subsequent paternity action. With this we agree.

A fraudulent intent is not necessary to estoppel. Although fraud is an essential element, it is sufficient that a fraudulent or unjust effect results from defendant's conduct. (*Dill v. Widman* (1952), 413 Ill. 448, 455-56; *Trustees of Schools v. Village of Cahokia* (1934), 357 Ill. 538, 543.) Our only difficulty with plaintiffs' argument is that this court has held the two-year limitation period is

not, technically speaking, a statute of limitations; it is a condition of the right to maintain the statutory action. (*Brown v. Box* (1967), 38 Ill.2d 80.) In other contexts, this court has said that a condition is substantive, not remedial, and that where the statute alone is the source of the right to sue it is jurisdictional, should be strictly construed, and must be observed. (*Lowrey v. Malkowski* (1960), 20 Ill.2d 280, 283-84 (dramshop); *Wilson v. Tromly* (1949), 404 Ill. 307, 310-11 (wrongful death).) While these observations may hold true for some statutes or for some purposes, we are not constrained to apply them to prevent the application of an estoppel doctrine in a paternity action. In the statutory actions cited, other than *Brown,* the possibility that an estoppel situation would arise is remote, and *Brown* did not consider the applicability of estoppel. Plaintiffs who are considering suit against strangers are unlikely to be easily lulled into forfeiting a cause of action. In a paternity action, however, a mother must formally accuse a man with whom, at least for some period of time, she was emotionally involved. She would be understandably reluctant to file charges against a man during the time he voluntarily acknowledged and supported the child.

The allegations in case No. 48002 demonstrate our reasons for concern. Defendant acknowledged paternity in a signed and witnessed statement the day before the child was born, and supported the child for three and one half years. Plaintiff brought a paternity action within six months after defendant withdrew his support. The mother's testimony in case No. 47738 is less compelling. Defendant had several times orally acknowledged paternity and had occasionally contributed support to the child or shared other household expenses. He also lived with the mother for a brief period nearly two years after the child was born. When he moved out, the mother sued within six months.

Accordingly, we hold that under appropriate circumstances a defendant in a paternity action may be estopped

from raising the two-year limitation period as a defense. (*Glus v. Brooklyn Eastern District Terminal* (1959), 359 U.S. 231, 3 L. Ed. 2d 770, 79 S. Ct. 760; *Fetch v. Buehner* (N.D. 1972), 200 N.W.2d 258; *Johnson v. State* (1939), 186 Okla. 80, 96 P.2d 313; Annot., Statute of Limitations in Illegitimacy or Bastardy Proceedings, 59 A.L.R.3d 685, 707-09 (1974).) The test to be applied is both factual and legal. The trial court must determine after an evidentiary hearing whether defendant's conduct within two years of the child's birth significantly discouraged plaintiff from bringing suit until after the limitation period expired. Estoppel may be appropriate where defendant has acknowledged the child in an unambiguous statement in the presence of third parties, even though not under oath or in open court, or where defendant has significantly contributed to the support of the child. In either situation an action must still be brought within two years of the most recent statement or significant contribution. In view of this holding, we need not consider plaintiffs' further contention that section 4 unconstitutionally discriminates between illegitimate children who are acknowledged formally and those who are acknowledged through the conduct and support of the putative father.

Finally, defendants contend we must dismiss these paternity actions because not brought in the name of the State or controlled by public prosecutors. Section 4 of the Paternity Act (Ill. Rev. Stat. 1973, ch. 106 3/4, par. 54) provides in part that the State's Attorneys or the Attorney General, upon request by the mother, shall file a complaint on her behalf. Defendants assert that section 4 does not provide for private enforcement. This court has directly held to the contrary, however, in *People ex rel. Adams v. Sanes* (1968), 41 Ill.2d 381, 384, where we found "no language in the section or in the remainder of the Act making it mandatory for a woman seeking relief under the Act to call upon these public agencies [State's Attorney or Attorney General] to institute her action. Rather, it seems clear that the legislature intended to provide a prosecutrix

with an alternative procedure to retaining private counsel." Defendants further argue that notwithstanding statutory authorization, private enforcement violates due process, which guarantees public prosecution and control of any judicial proceeding using jail or threat of jail as a regular sanction. In a paternity action, upon the filing of a complaint by the mother, civil summons issues. (Ill. Rev. Stat. 1973, ch. 106 3/4, par. 55.) Only if defendant fails to appear is he arrested under a warrant and held to answer the complaint. We see nothing unreasonable in this use of the arrest power where defendant ignores legal process. Many States, in fact, issue an arrest warrant in the first instance, despite the civil nature of subsequent proceedings. (10 Am. Jur. 2d *Bastards* sec. 81 (1963).) Of somewhat greater concern, however, is the treatment of defendant after the equivalent of a preliminary hearing. If the court finds sufficient cause for the complaint to have been filed, even a wholly cooperative defendant must post bond and security or he may be placed in jail pending trial. (Ill. Rev. Stat. 1973, ch. 106 3/4, par. 55.) Again, however, this practice is common in other States. 10 Am. Jur. 2d *Bastards* sec. 83 (1963).

Defendants direct our attention to cases holding that only disinterested prosecutors, not private attorneys, may control criminal cases. (*E.g., Born v. State* (Okla. Crim. App. 1964), 397 P.2d 924, 939-42.) Although we do not quarrel with these holdings, the question is whether a paternity action is sufficiently criminal or penal in nature to require public prosecution. Appellate courts in this State have consistently held that a paternity action, though criminal in form, is civil in nature. (*People ex rel. Harris v. Williams* (1st Dist. 1972), 8 Ill. App. 3d 821, 823-24; *Alsen v. Stoner* (2d Dist. 1969), 114 Ill. App. 2d 216, 223; *People ex rel. Jones v. Schmitt* (3d Dist. 1968), 101 Ill. App. 2d 183, 186; *Poindexter v. Willis* (5th Dist. 1967), 87 Ill. App. 2d 213, 216. *Cf. People ex rel. Meyers v. Glees* (1926), 322 Ill. 189, 190 (proceeding under former Bastardy Act, ch. 17, pars. 1-18).) Moreover, the

purpose of a modern paternity action is not to impose a penalty, but to convert a father's moral obligation to support his illegitimate children into a legal obligation. (See Annot., Right of Nonresident Mother to Maintain Bastardy Proceedings, 57 A.L.R.2d 689 (1958).) Defendants cite no case on point that supports their contention, and our research has revealed only contrary authority. The court in *Smith v. State* (1911), 146 Wis. 111, 130 N.W. 894, specifically rejected the argument that only a disinterested prosecutor could maintain a bastardy proceeding. In *Rozgall v. Dorrance* (1946), 147 Neb. 260, 23 N.W.2d 85, the court upheld a bastardy statute against due process attack where, as in Illinois, defendant could be jailed for not posting bond, and where the action could be prosecuted privately. (See *Brown v. Echtenkamp* (1936), 130 Neb. 297, 264 N.W. 757.) And in *State v. Carmena* (1971), 291 Minn. 91, 189 N.W.2d 191, where defendant was also required to post bond, the court held that under Minnesota statutes a paternity action could be brought only by private counsel, unless the mother was indigent and the child likely to become a public charge. The public prosecutor was otherwise unauthorized to act. (*Cf. Cupo v. District of Columbia* (D.C. Ct. App. 1972), 285 A.2d 696.) We agree and hold that private prosecution of a paternity suit does not violate due process.

The judgment in case No. 47738 is reversed; the judgment in case No. 48002 is vacated; and both cases are remanded to the trial courts for further proceedings consistent with this opinion.

*47738 — Reversed and remanded.*
*48002 — Vacated and remanded.*

MR. JUSTICE CREBS took no part in the consideration or decision of this case.