June 18, 1998

NO. 4-97-0418

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In Re:  the Marriage of                 )   Appeal from

ROGER C. ADAMS,                         )   Circuit Court of

Petitioner-Appellee,          )   Livingston County

and   (No. 96-D-73)           )   Nos. 96D73

L. COLLEEN ADAMS,                       )        96F76

Respondent,                   )        96F77

and                           )

L. COLLEEN ADAMS,                       )

Petitioner-Appellee,          )

v.    (No. 96-F-76)           )

TIMOTHY ARNOLD,                         )

Respondent-Appellant,         )

and                           )

L. COLLEEN ADAMS,                       )

Petitioner,                   )

v.    (No. 96-F-77)           )   Honor­able

PAUL ROBERT ZIEGLER,                    )   Charles H. Frank,

Respondent.                   )   Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

On April 26, 1996, petitioner Roger C. Adams filed a petition for dis­so­lu­tion of marriage in the circuit court of Livingston County.  In his petition, Roger alleged he was not the father of the two children, A.A. and K.A., born during his mar­riage to re­spon­dent L. Colleen Adams (Colleen).  On July 9, 1996, Col­leen filed two petitions to establish paternity.  One petition alleged Timo­thy Ar­nold was the bio­log­i­cal fa­ther of A.A.; the second alleged Paul Robert Ziegler was the bio­logi­cal father of K.A.  Ziegler agreed to provide financial support for K.A. and is not a party to this appeal.  In October 1996, the trial court consolidated the cases.

After a hearing, the trial court found no parent and child rela­tion­ship be­tween A.A. and Rog­er.  The trial court, however, found a parent and child relationship existed between Ar­nold and A.A. and ordered Arnold to pro­vide fi­nan­cial sup­port for A.A.  Ar­nold appeals, arguing the trial court erred by (1) fail­ing to find Roger was estopped from ceas­ing to act as A.A.'s father; (2) determining Colleen's peti­tion and the later blood tests were proper as the orders were barred by the expira­tion of the limita­tions period; and (3) failing to find Roger should re­main A.A.'s father because of A.A.'s wishes and best interests.  We affirm.

I.  BACKGROUND

Roger and Colleen were married in October 1982.  Roger had a vasectomy and was incapable of fathering chil­dren.  Roger and Colleen considered artificial insemination as a means to have children.  Col­leen later informed Roger she would be artifi­cially in­sem­inat­ed.  Colleen instead had an extramarital affair with Arnold, because she decided artificial insemination was too cost­ly.  A.A. was born on August 22, 1985.

Colleen told Roger A.A. was conceived through artifi­cial insemination at Carle Clinic in Champaign, Illinois.  She also informed Roger she paid the medical bills with a credit card.  Roger testified he had no reason to believe Colleen lied about A.A.'s con­ception.  Colleen became pregnant again in 1990.  She gave birth to K.A. on October 10, 1990, as a result of an extra­marital af­fair with Ziegler.  Colleen also lied to Roger about K.A.'s concep­tion.

Roger learned of one of Colleen's extramarital affairs in 1993 or 1994.  He did not learn of the affairs with Ziegler and Arnold until De­cem­ber 1995.  In March 1996, Colleen admitted to Roger A.A. was not conceived through artificial insemination but through an extra­marital affair with Arnold.  In April 1996, Roger filed a peti­tion for the dissolution of his marriage, Liv­ingston County case No. 96-D-73, in which he alleged he was not the fa­ther of A.A. and K.A.  On July 9, 1996, Colleen filed peti­tions against Arnold and Ziegler to establish their paternity of A.A. and K.A., re­spec­tively, case Nos. 96-F-76 and 96-F-77.  

Arnold filed a section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 1996)), arguing the petition was barred be­cause the relevant limitations period expired.  The trial court con­clud­ed Col­leen could bring the cause of action at that time and de­nied the mo­tion.  The causes were consolidated in October 1996.  

On January 9, 1997, the trial court ordered Arnold, Colleen, and A.A. to submit to deoxyribonucleic acid (DNA) test­ing for the de­ter­mi­na­tion of inherited characteristics.  The tests estab­lished a 99.99% probability Arnold was A.A.'s biologi­cal father.  At a hear­ing on April 1, 1997, Ar­nold stip­u­lat­ed he was the bio­logi­cal father of A.A.  The trial court con­clud­ed no par­ent-child rela­tionship existed be­tween Roger and A.A. and ordered Arnold to pro­vide finan­cial sup­port for A.A.  Ar­nold ap­peals.

II.  ESTOPPEL

Arnold argues Roger should have been estopped from claiming he was not A.A.'s father.  Arnold states Roger had al­ways known he was not A.A.'s bio­logi­cal fa­ther.  Ar­nold ap­par­ently maintains the fact A.A. was not a prod­uct of artifi­cial insemina­tion is incon­sequen­tial, because Roger was A.A.'s father for 10 years despite knowing A.A. was not his biological son.  Ar­nold cites 
Cessna v. Mont­gom­ery
, 63 Ill. 2d 71, 344 N.E.2d 447 (1976), overruled on other grounds in 
Dornfeld v. Julian
, 104 Ill. 2d 261, 267, 472 N.E.2d 431, 433 (1984), and 
Peo­ple ex rel. Andrews v. Andrews
, 94 Ill. App. 3d 84, 418 N.E.2d 470 (1981), and main­tains "a man may not assume the role of fa­ther and then discard it at his whim."  

Both 
Cessna
 and 
Andrews
 involve putative fathers who provided support for their children until after the then two-year limitations period for proving the existence of a parent-child rela­tion­ship expired.  
Cessna
, 63 Ill. 2d at 87, 344 N.E.2d at 454-55; 
Andrews
, 94 Ill. App. 3d at 85, 418 N.E.2d at 471.  The 
Cessna
 court held a defendant may be estopped from asserting the expiration of the two-year limitations period as a de­fense in a pa­ter­ni­ty suit.  To determine whether a estoppel ap­plies, the trial court must deter­mine whether the defendant's actions within the time period "sig­nificantly discouraged plain­tiff from bring­ing suit until after the limitation period ex­pired."  
Cessna
, 63 Ill. 2d at 88, 344 N.E.2d at 455.  The 
Andrews
 court, citing 
Cessna
, held be­cause the fa­ther's actions lulled the moth­er into be­liev­ing a pater­nity suit was unnec­es­sary, the fa­ther was es­topped from using the limi­ta­tions period's expiration as a de­fense.  
Andrews
, 94 Ill. App. 3d at 85-86, 418 N.E.2d at 471.  

This case is clearly distinguishable.  Roger was not A.A.'s father, and his conduct did not prevent a timely filed paternity suit.  Appar­ent­ly, Ar­nold re­lies on these cases to show more generally that a de­fen­dant in a pater­nity suit may be es­topped from as­sert­ing a lack of paternity based upon his con­duct and to argue Roger should be estopped from asserting his lack of pater­nity.  We disagree with Arnold's assertion Roger should be es­topped from arguing his lack of parentage in the dissolution of marriage case.  Arnold emphasizes Roger, knowing A.A. was not his bio­log­i­cal child, raised him as his son for 10 years.  Despite Arnold's apparent contentions the means of the conception of A.A. is in­consequen­tial, we note there is a dif­fer­ence be­tween arti­fi­cial insemi­na­tion and insemination by another man.  In Illi­nois, when a man donates semen for arti­fi­cial in­sem­ina­tion of a woman not his wife, that man is treated as if he was not the bio­logi­cal father of the conceived child.  750 ILCS 40/3(a) (West 1994).  A child born as a result of artificial insemination is considered the natural child of the husband and wife who request­ed and con­sented to the procedure.  750 ILCS 40/2 (West 1994).  It is one thing to ac­cept and raise a "fa­ther­less" child that legally be­comes the husband's own, and quite an­oth­er to pro­vide finan­cial and emo­tion­al sup­port to a child with a biolog­ical father capable of provid­ing that support.

Roger believed Colleen, and the record does not estab­lish he should have done otherwise prior to learning of the af­fairs in December 1995.  Roger learned of the cir­cum­stanc­es sur­round­ing A.A.'s con­cep­tion in early 1996.  He peti­tioned for the dis­solu­tion of his marriage shortly after obtain­ing that knowl­edge.  We find the trial court prop­erly con­cluded Roger was not estopped from as­serting his lack of paterni­ty of A.A.

III.  LIMITATIONS PERIOD

Arnold also argues the trial court erred in denying his motion to dismiss and in later ordering blood tests be­cause the limi­tations period expired, barring Colleen's peti­tion.  Ar­nold main­tains although the petition sets out to estab­lish the exis­tence of a parent-child relationship, it also im­plicitly proves the "nonex­istence" of a parent-child relationship between Roger and A.A.  Arnold contends section 8(a)(3) of the Parentage Act of 1984 (Act) (750 ILCS 45/8(a)(3) (West 1996) thus bars the peti­tion.  The trial court dis­agreed with Arnold's argu­ments.  It found the applicable limi­ta­tions period was that set forth in sub­sec­tion (a)(1).  

This court reviews rulings on section 2-619 motions to dis­miss 
de
 
novo
.  
Kemp-Golden v. Department of Children & Fami­ly Services
, 281 Ill. App. 3d 869, 879, 667 N.E.2d 688, 695 (1996).  Section 8(a) of the Act pro­vides the following, in relevant part:

"(a)(1)  An action brought by or on behalf of a child *** shall be barred if brought later than 2 years after the child reaches the age of majority ***.

Except as otherwise provided in this Section, an action brought by a party alleg­ing that he or she is the child's natural parent shall be barred if brought later than 2 years after the child reaches the age of majority.  ***

(2)  Failure to bring an action within 2 years shall not bar any party from asserting a defense in any action to declare the non-existence of the parent and child relation­ship.

(3)  An action to declare the 
non-exis­tence
 of the parent and child relationship shall be barred if brought later than 2 years after the petitioner obtains knowledge of relevant facts."  (Emphasis added.)  750 ILCS 45/8(a) (West 1996).

Section 8(a)(3) is inap­plicable to these facts.  Col­leen filed an action to prove the 
existence
 of a parent and child relationship.  Im­plicit in every peti­tion to prove the exis­tence of that rela­tion­ship under sec­tion 8(a)(1) is proof of the 
non-exis­tence
 of the relationship to everyone else.  Arnold's in­ter­pre­ta­tion would thus sub­ject all pater­nity peti­tions to the limi­ta­tions period pro­vided in section 8(a)(3), rendering the limita­tions period in section 8(a)(1) meaning­less.  Clear­ly, the legis­la­ture could not have intended such a result.  The trial court did not err in finding the limitations period in section 8(a)(3) did not apply.  Thus, the trial court did not err in denying the motion to dismiss and in ordering the paternity test.

IV.  A.A.'S WISHES

Arnold next maintains the trial court erred in failing to act according to A.A.'s expressed wish to retain the parent and child relation­ship with Roger.  Arnold also argues the best in­ter­ests of A.A. require Roger continue to support A.A. and act as his father.  Arnold cites no authority to show a court has the authority to per­mit the wish­es and best in­ter­ests of a child to create a par­ent-child rela­tion­ship where none le­gally ex­ists.  Arnold appar­ently treats this case as a decision between who would be the best fa­ther for A.A.  Al­though the cases were con­sol­i­dated, it is clear the court first addressed whether Roger was A.A.'s fa­ther.  When it deter­mined Roger was neither A.A.'s fa­ther nor responsi­ble for his support, the trial court then con­sid­ered the ques­tion of whether Ar­nold was A.A.'s father.  The trial court's consider­ation of these cases appears consistent with section 7(b) of the Act, which provides once the presumption of fatherhood is rebut­ted, the paternity of another man may be es­tablished in the same case.  750 ILCS 45/7(b) (West 1994).

Affirmed.

GARMAN, P.J., concurs.

COOK, J., specially concurs.

JUSTICE COOK, specially concurring:

The two-year statute of limitations on actions to de­clare the nonexistence of a parent and child relationship (750 ILCS 45/8(a)(3) (West 1996)) serves an important purpose.  It is wrong to make a child a part of a family unit and pass over sub­stantial con­cerns regard­ing the child's paterni­ty only to raise them years later in an attempt to avoid child support.  
In re Marriage of O'Brien
, 247 Ill. App. 3d 745, 750, 617 N.E.2d 873, 876 (1993).  The two-year statute prevents such attempts.  

It is somewhat surprising that Roger, who had developed a father-child relationship with A.A. over a 10-year period, would abandon that relationship because of his (legiti­mate) con­cern with the conduct of Colleen.  Nevertheless, that is his right, if he brings his nonexistence of paternity action within "2 years after [he] obtains knowledge of relevant facts."  750 ILCS 45/8(a)(3) (West 1996).  I agree that Roger lacked knowledge of "relevant facts" in this unusual case, even though he knew at all times that he was not the father of A.A.  Even if it were possi­ble to show Roger's earlier knowl­edge of those rele­vant facts, the guardian 
ad
 
litem
 for the children has apparently concluded that it is not worth doing so, and concluded that it is best that Roger be out of the picture.  

I agree with Arnold that a mother cannot file a pater­nity action against one man as a device to establish the non-paternity of the presumed father, but that is not the situa­tion we have here.  Before Colleen filed her paternity action against Arnold, Roger had already filed a nonexistence action, his peti­tion for disso­lution of marriage in which he denied paterni­ty.  It is true that the two-year statute of limitations for nonexis­tence of pater­ni­ty should not be evaded by devices such as at­tempting to bring an existence action "on behalf of a child."  750 ILCS 45/8(a)(1) (West 1996).  Courts have rejected the idea that an action that "[sought] to deprive the child of the only father he has known" could be considered brought on behalf of the child.  
In re Marriage of Ingram
, 176 Ill. App. 3d 413, 418, 531 N.E.2d 97, 100 (1988); see 
In re A.K.
, 250 Ill. App. 3d 981, 994-95, 620 N.E.2d 572, 581-82 (1993) (Cook, J., dissenting); see also 750 ILCS 45/7(b) (West 1996) (
after
 presumptions of paterni­ty rebut­ted, paternity of another may be shown in the same ac­tion).  The pater­ni­ty action against Arnold here did not seek to deprive A.A. of the only father he had known; Roger's actions in the dissolu­tion case had already done that.

Arnold is not a proper party to an action ques­tioning Roger's paternity.  
In re Marriage of Allen
, 265 Ill. App. 3d 208, 212, 638 N.E.2d 340, 344 (1994).  It may neverthe­less be useful to allow Arnold to ques­tion whether the rela­tion­ship be­tween A.A. and Roger could be attacked.  Someone should cer­tain­ly address that issue.  It is difficult, however, to give much weight to Arnold's argument when it is not based on concern for the welfare of A.A., but instead is made to advance Arnold's argument that he should not have to pay child support for A.A.  The argument would be much more convincing if it were made by the guardian 
ad
 
litem
.